[No. 7,104.—Department No. 2.]

# SHUGGART v. LYCOMING FIRE INSURANCE CO.

INSURANCE — POLICY — ASSIGNMENT — AGENT.— A policy of fire insurance to P. and E., partners, contained the provision, that upon the conveyance of the property insured, or the assignment of the policy, without the consent of the company indorsed thereon, the policy should be void; and also the further provision, that no agent was empowered to waive any of the conditions of the policy without special authority in writing from the company. The interest of E. in the property insured, and in the policy, was, without the knowledge or consent of the defendant, assigned to the plaintiff; but shortly afterward the local agent of the defendant was informed by the plaintiff of the transfer, and requested to have the proper indorsements made on the policy, which he promised within a day or two to do; and afterward two payments of premium were made by the firm of P. & S.; and also the policy was changed by the agent at the request of the assured, so as to transfer $25 insurance from a stable on the premises to the stock and machinery (the change being made by a writing across the face of the policy). In an action upon the policy for a loss, *held*,

1. That by the express provisions of the policy, the agent had no power to waive any of its conditions.

2. That the transfer by E. of his interest in the property, without the proper consent of the defendant, rendered the policy void as to the interest transferred.

3. That the condition of the policy in regard to the transfer of the property was not waived by the subsequent action of the agent so as to revive the policy.

4. That the payment and receipt of the premium, after the transfer to the plaintiff, did not estop the defendant from claiming a forfeiture.

5. That the Court below erred in instructing the jury, that if the agent knew of the transfer and approved the same, they should find for the plaintiff, as there was no evidence that he knew of it until long after it occurred.

6. That the Court erred also in refusing to instruct the jury, at the instance of defendant, that the promise of the agent to procure an assignment of the policy was not sufficient to entitle the plaintiff to recover, if no further steps were taken to procure the assignment.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Tenth District Court, County of Colusa. KEYSER, J.

The facts are stated in the opinion.

*W. S. Goodfellow*, for Appellant.

The local agent, Washburn, not having power to make contracts generally, could not bind the company by his consent to an assignment of the policy, nor could he waive the requirement of the policy that such consent be in writing and indorsed

on the policy. (Civ. Code, § 2542, annotated edition, notes; 2 Parsons' Contracts, 6th ed. 453; *Tate* v. *Citizens' M. F. Ins. Co.* 13 Gray, 79; *Ayres* v. *Hartford F. Ins. Co.* 17 Iowa, 189; *Harrison* v. *City Fire Ins. Co.* 9 Allen, 231; *Mentz* v. *Lancaster F. Ins. Co.* 79 Penn. St. 477; *Stringham* v. *St. Nicholas Ins. Co.* 37 How. Pr. 365; *Stringham* v. *St. Nicholas Ins. Co.* 3 Keyes, (N. Y.) 280; *Stringham* v. *St. Nicholas Ins. Co.* 4 Abb. Ct. App. Dec. 315; *Alexander* v. *Germania F. Ins. Co.* 66 N. Y. 464; *Rohrbach* v. *Germania F. Ins. Co.* 62 id. 61; *Merseran Phœnix M. L. Ins. Co.* 66 id. 274–280; *Bergson* v. *Builders' Ins. Co.* 38 Cal. 543.)

*Hart & Hart*, for Respondent.

The conduct of the defendant and its agents in agreeing to have the consent of the company indorsed, and in accepting premiums with full knowledge of the assignment and after the loss had occurred, amounted to a waiver of the condition in the policy, which required that in case of assignment the consent of the company should be indorsed on the policy. (*Illinois Fire Ins. Co.* v. *Stanton*, 57 Ill. 354; *Cumberland V. M. P. Ins. Co.* v. *Mitchell*, 48 Pa. St. 374; *Peoria Marine and Fire Ins. Co.* v. *Hall*, 12 Mich. 202; *Security Ins. Co.* v. *Fay*, 22 id. 467; *Viele* v. *Germania Ins. Co.* 26 Iowa, 9; May on Insurance, 618 *et seq.* 467–8; *Security Ins. Co.* v. *Fay*, 22 Mich. 473.)

Sharpstein, J.:

The facts of this case, about which there is no controversy, may be briefly stated as follows:

On the first day of July, 1878, the defendant issued a policy of insurance to Poulson & Eller upon their soda factory, machinery, materials, etc., situated at Colusa in this State, for the period of one year from said above mentioned date.

This insurance was effected through one Washburn, who was an agent of defendant, appointed by Brown, Craig & Co., its general agents, " with full power to bind proposals for insurance against loss or damage by fire in Colusa and vicinity, to solicit and forward applications for insurance, deliver policies

and renewals to applicants, and to collect and forward premiums on same, subject to such rules and instructions " as he might receive from the office of the said general agents.

The plaintiff alleges that Brown, Craig & Co. were the general agents of the defendant at San Francisco, and that Washburn was its special or local agent at Colusa. On the 28th of August, 1878, Eller conveyed his interest in the property insured to one Tharp, who on the 12th of September, 1878, conveyed the same to plaintiff, and he and Poulson thereafter carried on the business of manufacturing soda, as partners, until the 14th of December, 1878, when the property insured was destroyed by fire, resulting in a total loss.

The consent of the defendant to the transfer by Eller of his interest in the property insured to Tharp, or by Tharp to the plaintiff, was never indorsed upon the policy nor evidenced by any writing. There was no written assignment of the policy to either Tharp or plaintiff. After plaintiff became jointly interested with Poulson in the property, and before the fire occurred, the policy was changed so that $25 insurance on the stable upon the premises was transferred to the machinery and stock used for the manufacturing of soda.

The defendant paid to Poulson, after the fire, one-half of the amount for which the property was insured.

The plaintiff introduced evidence which tended to prove that there was a verbal transfer by Eller of his interest in the policy to Tharp, and that the latter in the same mode transferred it to plaintiff, and that Washburn, the local agent, had notice of those transfers some time after they were made, as well as of the transfers of the property insured ; and that after they were made, plaintiff requested said local agent to have said transfers assented to by the defendant; and that said local agent agreed to attend to it as soon as he could get a little time ; and that it would be all right in a day or two. Poulson testified that two payments on account of premium were made by him for himself and plaintiff after the transfer of the Eller interest in the policy to the plaintiff; and that he and plaintiff procured through said Washburn a policy in the Phœnix Insurance Company, of which he was the local agent, and said Brown, Craig & Co., were the general agents, upon a barn built by " Poulson & Shuggart ";

and that said policy was made to said firm of Poulson & Shuggart; and that Washburn was the only party that he ever did any business with in relation to said insurance, "from the time that the policy was issued until the time of the fire, including the issuance of the policy."

Plaintiff testified that about three weeks after he had purchased the Eller interest in the property, Washburn told him (plaintiff) that the policy should be changed from Eller and Poulson to plaintiff and Poulson. After the fire plaintiff met Thomas and Haskell, two members of the firm of Brown, Craig & Co., general agents of defendant, and one of them said, "I do not know who Shuggart is. We do not know him." But either Thomas or Haskell said that he was going to do all that he could to get plaintiff's money. He thought as soon as he could write east to the head office, they would pay it.

When the plaintiff rested, the defendant moved for a new suit on the following grounds:

"1. That it had not been shown that there was any contract of insurance at all between plaintiff and defendant.

"2. That no assignment of the policy from Eller to Tharp had been shown, nor that defendant had assented to such assignment in writing on the policy, or at all.

"3. That no assignment of the policy from Tharp to Shuggart had been shown, nor that defendant's agent had assented to such assignment in writing or otherwise, nor had knowledge of such assignment at the time.

"4. That there was no evidence to show that Washburn, the local agent of the company, had in any manner waived any conditions of the policy, and no evidence to show that he had authority so to do."

This motion was denied, and the ruling of the Court thereon is assigned by the defendant as error.

Defendant then called Washburn, its local agent, as a witness, and he testified in substance, that he did not hear of Eller's sale of his interest in the property until about two weeks after Tharp sold to plaintiff, and that up to that time he was ignorant of any change in the ownership of it. He further testified, that plaintiff applied to him to have the policy so changed that he, plaintiff, would take Eller's interest in it; and that witness

told plaintiff that it would be necessary for him to obtain an assignment from Eller, as no change in the policies could be made without his consent. Witness further stated that he told plaintiff, that if he would give to him (witness) Eller's address, witness would send the policy to Eller, in order that he might indorse his consent on it, and that if he refused, witness would cancel it and issue a new policy to plaintiff. The witness positively denied that he ever promised to procure the assent of the defendant to the transfer of the property and policy to plaintiff, unless Eller's written assignment of the policy was first obtained. So far as the evidence introduced by defendant conflicts with that introduced by plaintiff, we are compelled on this appeal to accept the latter as the true version.

The Court instructed the jury as follows:

"A policy of insurance may be transferred by oral assignment when the policy is delivered for a valuable consideration, with intent to vest all the title thereto. If, therefore, the jury believe from the evidence that, at the date of the sale and transfer of the property insured, the owner of the policy herein sued upon delivered said policy to plaintiff, with intent to transfer the title thereto to plaintiff, that said transfer was for valuable consideration, and if the agent of the company knew of said transfer and approved the same, then the jury will find for plaintiff.

"If this policy was assigned by Eller, the insured, to plaintiff without the consent of the insurance company, the plaintiff cannot recover unless said assignment was afterward sanctioned by the company."

And the Court refused to give the following instructions, which defendant requested it to give:

"If this policy was assigned to the plaintiff by Eller, the assured, without the consent of the company, the plaintiff cannot recover.

"The promise of Washburn to procure an assignment of the policy is not sufficient to entitle plaintiff to recover on this policy, if no further steps were taken to procure an assignment of the policy."

The defendant excepted to the instructions given, and to the

refusal of the Court to give the instructions which defendant requested it to give.

The policy sued upon was signed by the president and secretary of the defendant at Muncy, Pa., and was countersigned at San Francisco, Cal., by Brown, Craig & Co., designating themselves as the general agents of the defendant, and by the terms of said policy it was not to be valid until so countersigned. No consent to the assignment or transfer of said policy to any person was indorsed thereon. The policy contained the following terms, stipulations, and conditions:

" This policy can only be assigned in case of actual sale of the property insured, which assignment must be approved by an officer or an agent of the company.

" If the property be sold or transferred, or any change take place in title or possession, whether by legal process, or judicial decree, or voluntary transfer, or executory contract, or conveyance, or if this policy shall be assigned before a loss without the consent of the company indorsed hereon, then and in every such case this policy shall be void.

" When property insured by this company shall be sold either by conveyance or under executory contract, or if alienated otherwise, this policy shall be void unless the policy is transferred to the purchaser with the consent of the company indorsed thereon in writing.

" The use of general terms, or anything less than a distinct, specific agreement clearly expressed and indorsed on this policy, shall not be construed as a waiver of any printed or written condition or restriction therein.

" No agent is empowered to waive any of the conditions of this policy, either before or after a loss, without special authority in writing from the company.

" And it is hereby understood and agreed by and between this company and the assured, that this policy is made and accepted in reference to the foregoing terms and conditions, which are hereby declared to be a part of this contract, and to be used and resorted to in order to determine the rights and obligations of the parties hereto in cases not otherwise specially provided for in writing."

As has been observed, the original parties to the policy of in-

surance in this case were the defendant and the firm of Poulson & Eller. But the plaintiff, before the loss, became invested with all the interest which Eller had in the property insured, and in the policy of insurance, so far as he could transfer his interest therein. It was stipulated by the original parties to the policy that if the property insured should be alienated, the policy should be void, unless transferred to the alienee, with the consent of the defendant in writing. We are unable to find any ·evidence in the transcript which tends to prove that the defendant ever consented in writing, or otherwise, to the transfer of the policy in this case to the plaintiff or to his grantor. But it is insisted, on behalf of the plaintiff, that he informed the local agent of the transfer of the property and assignment of the policy by Eller to Tharp, and by the latter to plaintiff, and requested said local agent to have the proper indorsements made upon the policy, and that said local agent agreed that he would within a day or two, and that two payments of premium were made by the firm of Poulson & Shuggart, successors to Poulson & Eller, and accepted by the defendant after it had knowledge that the interest of Eller had been transferred to plaintiff; and that the last payment was made to the local agent in the presence of the general agent; and that the acceptance of said premiums with knowledge of said transfer amounted to a waiver of the condition which required the consent of the company to the transfer to be indorsed on the policy in writing. There is, however, another stipulation which seems to militate against that view of the matter. We refer now to the following: "No agent is empowered to waive any of the conditions of this policy, either before or after loss, without special authority in writing from the company." It is not claimed that defendant in writing ever authorized any agent to waive any of the conditions of this policy. No case has been brought to our attention in which it has been held that a clause of this character in a policy may be wholly disregarded. In fact, it does not appear from the reports of the cases cited on either side, whether or not any of the policies sued upon in those cases contained such a clause. In *Illinois Fire Insurance Company* v. *Stanton*, 57 Ill. 354, the policy contained a condition that on the alienation or sale of the property insured, the insurance should cease and be void, unless the

policy should be duly assigned or confirmed by the consent of the directors, previous to the loss, and no policy should be regarded as assigned, unless the consent of the directors should be certified thereon by the secretary of the company. A sale of certain property insured by the company was about to be made, and before consummating it, the parties in interest went to the local agents of the company and told them that they were about to make the transfer. The agents had previously changed policies under similar circumstances. They told the parties that the policy would be good until it could be procured from St. Louis, and the formal consent of the company entered upon it. Before that was done the property was destroyed by fire. In that case, the Court said: " It is in proof that it had been the custom of the agents to give such consent, and their acts had always been ratified by the company. In giving such consent, the agents were, therefore, acting within the scope of their authority. Such agents will be held to have such power as the company knowingly permits them to exercise, and the fact that the company ratifies such acts on the part of their agents will be regarded as evidence of that authority in the agents." These remarks are not applicable to this case, in which there is no evidence that the agents of the defendant ever before consented to a transfer of property insured by it, with the understanding that the policy should inure to the benefit of the transferee, without any indorsement in writing to that effect. And we are unable to discover that the policy in that case contained a clause which prohibited the agents from waiving any condition of the policy without first being authorized to do so in writing. The question in this case is not, as it was in *Cumberland Valley Mutual Protective Co.* v. *Mitchell*, 48 Pa. St. 374, whether a ratification by the company of the agent's acts, under a mistake of facts, would revive the policy, because in this case there is no evidence which tends to prove that the defendant ever ratified the acts of its agent in respect to the transfer of the property and policy.

We do not think that the case of *Peoria M. & F. Insurance Co.* v. *Hall*, 12 Mich. 202, is at all analogous to this. In that case the agent of the company was informed, before the policy issued, that the assured kept and intended to keep gunpowder in his store, to which the agent assented, and agreed to have

written permission for keeping it inserted in the policy. The Court held that the keeping of gunpowder under those circumstances did not render the policy void, whether such permission was indorsed on the policy or not. In *Security Insurance Co.* v. *Fay*, 22 Mich. 467, the Court says: "The condition referred to contemplates that the consent of future insurance shall be given in advance, for the policy becomes void if there is any subsequent insurance without consent. When the policy was taken out in October in the Detroit company, this policy at once became void, according to our decision in *Western Mass. Ins. Co.* v. *Riker*, 10 Mich. 279." In *Viele* v. *Germania Ins. Co.* 26 Iowa, 9, the question whether an agent could waive a forfeiture occasioned by so using the premises as to increase the risk without the assent of the company indorsed on the policy, was very fully discussed. The Court said: "There was evidence tending to prove that the agent had full power to effect contracts of insurance; to fix rates of premiums, *to give consent to the increase of risk*, and change of occupation of buildings insured, to cancel policies in his discretion," etc. As there was evidence tending to prove that the agent, with a full knowledge of all the facts, consented to that use of the premises which it was claimed enhanced the risk, it was held a waiver of the condition that such consent should be indorsed upon the policy. In *Buckley* v. *Garrett*, 47 Pa. St. 204, the assured were partners, and had procured a policy which was to continue in force so long as the yearly payments stipulated in it were paid, With the consent of the company the assured assigned the policy to F. N. & Co., and with like consent they assigned to E. P., and with like consent she assigned it to C. H., who held it at the time of the fire, Seven years before the fire occurred, one of the partners to whom the policy was issued transferred his interest in the property to his copartner, who continued to pay the premiums up to the time of the fire. These payments were made to the treasurer, who was also a manager of the company. His office was in the same room with the secretary of the company, whose business it was to approve of transfers. The action was brought by the last assignee. The Court held that there was evidence which should have been submitted to the jury, of knowledge on the part of the company of the transfer,

and estoppel in consequence of successive receipts of the premiums after that.

In *Finley* v. *The Lycoming Mutual Insurance Co.* 30 Pa. St. 311, the Court said: "It was the express duty of the purchaser of the insured property to give notice to the company, and have the policy assigned according to its conditions, if he wished it continued for his use. The company were not bound to inquire anything about it. His paying assessments on the premium note given by his copartner, was no notice, or anything from which the company could infer a change in their former relation, even if notice in this way could avail, which it would not." In that case one of the partners had conveyed his interest in the property insured to his copartner, without first obtaining the assent of the insurer thereto, in the mode prescribed in the policy. In *Mentz* v. *Lancaster Fire Ins. Co.* 79 Pa. St. 475, the Court says: "The evidence offered and rejected was that the agent had told the assured that the proper indorsement had been made on the policy. Now, such a declaration made by a duly authorized agent or officer would clearly operate as an estoppel. It lulled the party to sleep by the assurance that the conditions of the policy had been complied with, and that his indemnity was secured." In *Worcester Bank* v. *Hartford Fire Ins. Co.* 11 Cush. 265, there was evidence tending to prove that the agent took the policy for the purpose of making the proper indorsement, and then returned it, saying, or giving the assured to understand, that the proper indorsement had been made. The Court held that that did not constitute a sufficient compliance with the condition which required an assent in writing to be indorsed upon the policy.

That the transfer by Eller of his interest in the property insured to Tharp without the proper consent of the defendant, rendered the policy void as to the property so transferred, does not admit of doubt. And there is no evidence tending to prove that the defendant or any agent of the defendant ever knew of that transfer until after it was made. The plaintiff testifies that he applied to the local agent for the consent of the defendant for the transfer to him, plaintiff, about three weeks after he purchased the property of Tharp. In answer to the question, "What did he (the local agent) say about it?" the plaintiff replied,

" He said that he would change it and see that it was all right. He said, 'I will change that for you on the very first day I have time. I am a little busy now, but I will change that for you in a few days.' I told him the sooner the better, because there was no telling what time something might turn up, and he said that he would attend to it in a few days; that he would attend to it right away." In view of the fact that the policy had become void, as to the interest which plaintiff had acquired in the property insured, it does not seem to us that the condition of the policy in regard to a transfer of the property could be waived so as to revive the indemnity as to that interest in this manner. If the agent had told the plaintiff that the proper assent in writing had been indorsed upon the policy, the question of estoppel might arise. But we are unable to see how it can, upon the facts before the Court.

The circumstance of the payment and receipt of the premium after the transfer of the Eller interest to the plaintiff, is relied upon to constitute an estoppel. We cannot view it in that light. The premium was actually paid by Poulson, one of the partners to whom the policy was issued. His interest in it was not affected by the transfer of his copartner's interest in the property to a third party. But so long as no change was made in the policy, it was incumbent on Poulson to pay the premium, which it called for, in order to prevent the policy from becoming wholly void.

Consistently with the views which we entertain of the facts of this case and the law applicable thereto, we must hold that the Court erred in instructing the jury that " if the agent knew of said transfer, and approved the same, then the jury will find for the plaintiff." There is no evidence tending to prove that the agent did know of the transfer until long after it had occurred. The real question was, whether or not his promise to have the policy changed bound the company, or estopped it from denying that it was changed according to that agreement. The instruction which defendant requested the Court to give, viz., " the promise of Washburn to procure an assignment of the policy, is not sufficient to entitle plaintiff to recover on this policy, if no further steps were taken to procure an assignment of the policy," should have been given. The instruction that " if this policy

was assigned by Eller, the insured, to plaintiff without the consent of the insurance company, the plaintiff cannot recover unless said assignment was afterward sanctioned by the company," cannot be considered the equivalent of the one which the Court refused to give. It left the jury to determine what would constitute a sanction by the defendant of the assignment, which, in the absence of any evidence of a direct sanction of it, was liable to mislead the jury.

For these errors, and the insufficiency of the evidence to justify the verdict, the judgment and order denying the motion for a new trial must be reversed.

Judgment and order reversed, and cause remanded.

MYRICK, J., and THORNTON, J., concurred.