[L. A. Nos. 5905 and 5606.   In Bank.—December 1, 1919.]

GEORGE H. OSWALD, Plaintiff and Appellant, v. JOHN
F. SCHWARTZ, Treasurer, etc., Defendant. RALPH
GRANGER, Intervener and Appellant, PACIFIC
METAL PRODUCTS COMPANY (a Corporation),
Intervener and Respondent.

[1] ROAD IMPROVEMENT BONDS — ASSIGNMENT BY SUBCONTRACTOR—
NOTICE OF ASSIGNMENT—SERVICE UPON COUNTY—PRIORITIES OF AS-
SIGNMENTS.—Notice of the assignment of the right of a subcontractor
to bonds issued by a county for road work done under the Road Im-
provement Act of 1907 (Stats. 1907, p. 806), should be served upon
the county and not upon the contractor, since the contractor is not
the debtor, and the claim of an assignee who served notice of its
assignment on the county was superior to that of the claim of a
prior assignee who served his notice on the contractor.

[2] ASSIGNMENT—CHOSE IN ACTION—PAROL.—An assignment of a
chose in action may be orally made.

[3] ROAD IMPROVEMENT—ORAL ASSIGNMENT OF SUBCONTRACT—VALIDITY
OF.—An assignment by a subcontractor of his contract for the
doing of certain road improvement work and his right to the bonds
which he was to receive in compensation for the work, as security
for moneys advanced to enable him to perform his contract, is
valid, although orally made.

[4] ID.—ASSIGNMENT OF SUBCONTRACT—KNOWLEDGE OF CONTRACTOR—
SUBSEQUENT INDEBTEDNESS OF SUBCONTRACTOR—SUPERIOR RIGHTS OF
ASSIGNEE.—Where a subcontractor with knowledge of the contractor
assigned his contract and right to bonds before beginning work,
any indebtedness of the subcontractor subsequently incurred could
not be urged by the contractor as a claim against the bonds to
the detriment of the assignee.

APPEALS from a judgment of the Superior Court of
San Diego County.   W. A. Sloane, Judge.   Affirmed as to
Appellant-plaintiff, reversed as to Appellant-intervener.

The facts are stated in the opinion of the court.

Crouch & Chambers and George W. Crouch for Plaintiff
and Appellant.

Ray M. Harris for Intervener and Appellant.

Clifford C. Pease for Intervener and Respondent.

THE COURT.—In so far as the appeal of appellant Oswald is concerned we are entirely satisfied with the opinion filed by the district court of appeal of the second appellate district, division one, and adopt the same as the opinion of this court.

[1]  As far as the appeal of appellant Granger, involving the rights of the Pacific Metal Products Company, is concerned, we are satisfied that the judgment of the superior court was correct; in other words, that as Granger had not notified the county of his assignment, and as the Pacific Metal Products Company had given such notice, the claim of the latter became superior to that of Granger. Under the circumstances Oswald was not the debtor upon whom notice of assignment was required to be served. In this respect the case is within the doctrine declared in *Adamson* v. *Paonessa,* 180 Cal. 157, [179 Pac. 880].

The judgment of the superior court and the order denying the motion of plaintiff Oswald to vacate the judgment are in all respects affirmed.

All the Justices concurred, except Melvin, J., who was absent.

The opinion of the district court of appeal referred to in the foregoing opinion follows:

In the year 1912 the board of supervisors of San Diego County determined to do certain road improvement work under an act of the legislature, the terms of which are not in question here. By that act bonds were authorized to be issued to cover the cost of the work. Appellant Oswald was awarded a contract to make the improvements, in consideration of the doing of which it was contracted that he should receive bonds of the par value of $315,260.96. The work was completed as contracted for and bonds in the amount mentioned came into the hands of respondent Schwartz, treasurer of said San Diego County, to be delivered to the persons entitled thereto. Upon completion of the work the treasurer, with the consent of Oswald, delivered to intervener Granger 98 bonds of the par value of $98,950. He delivered to Oswald bonds of the par value of $149,760.89. There then remained in his hands bonds of the par value of $66,550 as to which there

were conflicting claims as between Oswald, Granger, and the Pacific Metal Products Company. Claiming to be entitled to all of the bonds remaining in the hands of the county treasurer, Oswald brought this suit in *mandamus* to compel that officer to deliver the bonds to him. Whereupon petitions in intervention were filed by Granger and Pacific Metal Products Company. The trial judgment determined that Oswald was entitled to bonds of the value of $38,889.16; that Granger was entitled to bonds of the par value of $23,160.84, and that Pacific Metal Products Company was entitled to bonds in the amount of four thousand five hundred dollars, par value. Oswald appealed from the whole of the judgment, which was adverse to him, and also from an order denying his motion to set aside the judgment and to enter a different judgment upon the findings. Intervener Granger appealed only from that portion of the judgment which awarded bonds to Pacific Metal Products Company—his appeal being presented upon the judgment-roll alone.

This controversy as to the right to possession of the bonds arose by reason of the following facts: After the contract for the doing of the improvement work was awarded to Oswald, he desired to sublet a portion of the work and entered into a contract with one Knight for the doing of certain grading, surfacing, and excavating. The compensation of Knight was agreed to be made by delivering to him a portion of the bonds which Oswald was to receive under the terms of the main contract. The provision of the Knight contract relative to the payment to be made was as follows: "Payment for said work is to be made by the party of the first part [Oswald] to the party of the second part when bonds are issued by the County Treasurer of said county in payment for the performance of his said contract with the said county, the party of the second part [Knight] taking the said bonds at par, and the party of the first part hereby sells and assigns to the party of the second part sufficient of said bonds to pay for the doing of the work herein agreed to be done by second party, the amount thereof being approximately one hundred and twenty-two thousand dollars ($122,000.00)." In the course of the negotiation between Oswald and Knight

which led up to the making of the subcontract, it appeared that Knight had not sufficient money with which to cover the necessary outlay incidental to the doing of the work. He, therefore, consulted the Merchants National Bank of San Diego, of which intervener Granger was president and one Rogers cashier. He represented to the bank and Granger that if he could obtain the necessary money to enable him to carry through the work which Oswald desired him to do, the contract could be performed at a large profit. He offered to assign any contract that he might be given, also the right to the bonds which would accrue thereunder, to the bank if the bank would advance to him the necessary money. He produced Oswald to the bank and Oswald was present during the principal negotiations which led to the agreement made for the advancing of the funds of the bank and Granger. Granger was brought into the transaction because of the fact that it was the bank's position that the law would not permit it to loan on such an account to exceed the sum of thirty thousand dollars. This amount Knight anticipated would not be sufficient, although he thought, and so stated, that an additional twenty thousand dollars would carry him through. It was then agreed that Granger should individually advance to Knight such sums of money as might be necessary over and above the thirty thousand dollars, which the bank was to and did advance to Knight. Whereupon Oswald executed the contract with Knight and the contract was delivered over to the bank on September 13, 1912, together with an assignment of the bonds referred to therein and which were to be received by Knight in compensation for the work. Oswald was present at the time the written assignment was made and was present at the time of the agreement made by Granger to supplement the bank's advances. At that time no formal written assignment was made on behalf of Granger. Referring to that transaction, Mr. Granger testified as follows: "The contract that Mr. Knight got from Mr. Oswald was deposited with us. Mr. Knight said, 'I will put this up as security and give you an order for these bonds for your security,' and I asked him about what security I would have if I had to put up extra. . . . Mr. Knight says, 'This

contract and these bonds, you will keep this contract, and nobody will have a prior claim to you, and whatever money you put up, you will collect these bonds, you will get these bonds when they are issued and you will hold out any money you will put up and I will leave up the whole thing as security.' " At another point in his testimony the witness said: "Mr. Wadham and Mr. Oswald and myself went into my private room, and there is where Mr. Oswald repeated again what I have said, and said, 'Granger, why can't you put this money up, you have got the money, and why can't you put it up?' He said, 'You can't lose anything on this, and I will guarantee that you will never lose anything on these bonds.' " The money that was in fact advanced by the bank and Granger to Knight amounted to the sum of $129,370.76. So that it appears, assuming that Granger was protected by a valid assignment of the bonds earned by Knight, and made on September 13, 1912, and assuming there was no other intervening superior claim, that the judgment as between Oswald and Granger should not be disturbed. And upon the same assumption, and assuming that the apportionment to Pacific Metal Products Company was improperly made, then the bonds so apportioned to the latter should also be awarded to Granger. There are some questions affecting this latter matter, which are argued in Granger's appeal, which will be considered at a later point in the opinion.

Taking up first the appeal of Oswald: The principal contentions made are that the alleged oral assignment by Knight in favor of Granger, claimed to have been made on September 13th, was invalid, and, if not invalid by reason of there having been no writing evidencing the same, that the evidence was insufficient to support the finding of even an oral assignment. [2] That an assignment of a chose in action may be orally made seems to be beyond question. (*Puterbaugh* v. *McCray*, 25 Cal. App. 469, [144 Pac. 149]; 2 R. C. L., p. 615.) The particular terms of the transaction had with the bank under which it was agreed that Granger was to advance money in excess of that to be loaned by the bank, and that he was to have the benefit of the security which the bonds to be issued to Knight would afford, were fully understood by Oswald and, in fact, as

appears from the testimony, Oswald was active in bringing about the consent of the bank and Granger to make the advances to Knight. That there is ample evidence in the record to support the conclusion that it was the full understanding of the parties that an assignment of the contract and bonds had been made for the benefit of both the bank and Granger on September 13th, we are well satisfied. The cashier of the bank explained that his failure to make a writing in favor of Granger, as was done in favor of the bank, was an omission on his part. He stated further that later on, in May of 1913, having in mind that there should perhaps be a writing evidencing such assignment to Granger, he had one drawn and Knight signed it. [3] On Oswald's part it is claimed that this written assignment to Granger was the first valid assignment made, but, as has already been stated, we think that the oral transaction which was consummated on September 13th was sufficient to create an assignment in Granger's favor. The importance which these dates bear to the controversy on Oswald's appeal is apparent from the fact that Oswald claims the right to offset the charge of a considerable sum of money against Knight on account of mules, etc., sold to Knight during the progress of the work. If these offsets occurred prior to any valid assignment to Granger, then Oswald's contentions on the appeal would be valid. It seemed to be the opinion of the trial judge, as expressed in his findings, and one in which we concur, that assuming the invalidity of the alleged oral assignment to Granger, Oswald, by reason of his participation in and knowledge of the whole transaction, should be estopped from questioning the fact of an assignment made to Granger on September 13, 1912. It is unnecessary, however, to pass upon the question as to whether the findings sufficiently show the facts which the evidence discloses pertinent to the matter of estoppel, for we have already determined that the oral assignment was valid. [4] At the time this assignment was made Knight had not begun work on the job; hence any indebtedness of Knight subsequently incurred could not be urged as a claim against the bonds to the detriment of Granger.

Referring now particularly to the award made to Pacific Metal Products Company: The trial judge evidently based

the award made to this company upon the proposition that as Granger had not notified the county or its treasurer of his assignment and as the Pacific Metal Products Company did give such a notice, the latter's claim became superior to that of Granger. The assignment made in the first instance to Granger carried the equitable right to the bonds when issued, even if it did not pass legal title thereto. Assuming that the assignment was nothing more than an agreement to create a lien upon the bonds, and one requiring notice to be given to the debtor of Knight in order to shut off the demands of other claimants, it is our opinion that Oswald, and not the board of supervisors or the county, was the debtor to whom this notice was required to be given. The Road District Improvement Act of 1907 (Stats. 1907, p. 806; Deering's 1915 ed., Gen. Laws, Act 1465), provides for the issuance of bonds, collectible by means of special assessments upon land within a prescribed road district for the benefit of the road district fund, out of which fund the bonds shall be paid. The obligations thus created do not constitute a debt of the county or its officers. The debtor of Knight, and the only debtor to whom the right of notice could have accrued, was Oswald, the person with whom Knight made the contract under which his right to the bonds was acquired. In view of what has been stated in the foregoing, the conclusion of the court is apparent.

There was, we think, sufficient evidence to sustain all of the material findings made by the trial judge.

The judgment as against plaintiff Oswald is affirmed. The order made denying the motion of plaintiff Oswald to vacate the judgment is affirmed. The judgment in favor of Pacific Metal Products Company is reversed, with direction to the trial court, upon the findings as made, to enter judgment awarding to intervener Granger bonds of the par value of four thousand five hundred dollars, in addition to the award heretofore made by the judgment; said intervener Granger to have his costs.

Rehearing denied.

In denying a rehearing the court filed the following opinion on December 29, 1919, thereon:

THE COURT.—Application for rehearing.

Complaint is made in a petition for rehearing filed on behalf of appellant Granger that, in view of the fact that Oswald had a right of setoff *against Knight* as to a portion of the Knight bonds going to Granger and the Pacific Metal Products Company, the right of the latter (the Metal Products Company) is extinguished to the amount of the setoff, which is more in amount than the value of the bonds going to the company, and Granger is entitled by virtue of his prior assignment to the bonds given to the company. There is no force in this claim in view of what is shown in that portion of the district court of appeal opinion which we have approved. By reason of the fact that Granger did *not* give notice of his assignment to the county and that the company did give notice of its assignment, the company's assignment became superior to that of Granger and its claim must first be satisfied. Hence, if there is any offset to be considered, it would have to come out of Granger's share in the bonds remaining after the company's claim is satisfied. So no error has been made in favor of the company as against Granger. The opinion of the district court of appeal sufficiently shows why Oswald cannot urge this claim of setoff as *against Granger,* and so no error has been made in regard to Oswald's rights.

The petition for a rehearing is denied.

All the Justices concurred.