[Civ. No. 6508. Fourth Dist. Apr. 28, 1961.]

JOSEPH GRECO et al., Respondents, v. OREGON MUTUAL FIRE INSURANCE COMPANY, Appellant.

Long & Levit, Bert W. Levit and David C. Bogert for Appellant.

Lerrigo, Thuesen, Thompson & Thompson, Donald Thuesen, Thomas F. Lopez and Floyd H. Hyde for Respondents.

COUGHLIN, J.—This is an appeal from a judgment in an action for declaratory relief seeking a determination of rights under a fire insurance policy. The plaintiffs, respondents herein, Greco, Flickinger and Konkel, respectively, were the vendor, vendee and encumbrancer of improved real property. The defendant, appellant herein, Oregon Mutual Insurance Company, sued as Oregon Mutual Fire Insurance Company, was the insurer under a policy of fire insurance issued to Greco, as owner, covering the improvements on that property. The policy of insurance was issued to Greco in 1955 and contained a loss-payable clause in favor of Konkel who was the beneficiary under a $7,500 deed of trust against the property. On May 13, 1958, Greco, through escrow instructions, agreed to sell the property to persons named Ream and Fink for $10,935.83; Ream and Fink agreed to assume the $7,500 trust deed in favor of Konkel and to execute a note secured by a second trust deed in favor of Greco for $3,435.83; the buyers were to "receive rentals due as of June 1, 1958"; fire insurance was to be prorated to June 1, 1958; and the escrow was to be completed within 30 days. At this time the trust deed obligation in favor of Konkel had been reduced to $4,935.83. However, as a condition to the deal Konkel was to reloan $2,564.17 to Greco, thus restoring the trust deed amount to $7,500. Although this condition was not set forth in the foregoing escrow instructions, Konkel executed separate instructions whereby he agreed to advance the money in question;

deposited $1,500 to be paid to Greco forthwith; but required 45 days within which to raise the balance of the money. Contemporaneously, also through separate escrow instructions, Ream and Fink agreed to sell the property to Flickinger for $16,335.83; Flickinger agreed to assume the $7,500 obligation payable to Konkel, the $3,435.83 obligation payable to Greco and to execute a note for $5,400 payable to Ream and Fink; the buyer was to receive the rentals due as of June 1, 1958; fire insurance was to be prorated as of June 1, 1958; and the escrows were to be completed within 30 days. Deeds which would effect conveyances in accord with the foregoing agreements were deposited in the respective escrows by Greco and by Ream and Fink.

On June 7, 1958, before completion of the escrows, a fire destroyed the building on the subject property and the loss incurred was fixed by the defendant insurance company's adjuster at $19,000.

The parties had intended that the Greco fire insurance policy should be transferred to Flickinger, the ultimate purchaser. However, an assignment thereof, by its terms, could be made only with the written consent of the insurance company and this consent was never obtained.

After the fire Flickinger expressed concern about the status of the fire insurance; the escrow agreements provided that any party to the escrow could terminate the transaction upon failure of completion within the prescribed 30-day period; but upon assurance from the escrow agent that a transfer of the existing insurance always is approved, Flickinger went ahead with the deal; completion was effected June 23, 1958; the deeds theretofore deposited in escrow were delivered and recorded; the rentals and insurance premiums were prorated as agreed; and the fire policy was submitted to the defendant company for transfer but, as heretofore noted, its consent thereto never was obtained.

Two days before the fire Flickinger obtained a fire insurance policy from the Gulf Insurance Company covering the premises in question which insured him to the extent of $10,300, with loss payable to Konkel and Greco as encumbrancers. After the fire and completion of the escrow this company paid the proceeds of this policy to Flickinger, Konkel and Greco, resulting in full payment of the Konkel obligation and reduction of the Greco obligation to $1,000.

After the fire the defendant insurance company's adjuster fixed the fire loss at $19,000; was told of the pending escrows

and the contemplated transfer of his company's policy to Flickinger; advised that he, the adjuster, would prepare necessary proofs of loss within the prescribed period but later, and before expiration of that period, retracted his offer. In the meantime, the adjuster had asked for and received copies of all of the documents in the escrow files. On June 24, the escrow holder, by letter, had advised the defendant company of the transfer of the property to Flickinger.

The subject insurance policy requires the insured to file a proof of loss within 60 days. Within this time, i.e., on August 6, 1958, Flickinger filed such a proof, using the form prescribed by the insurance company therefor; identified himself therein as the insured, stating that his interest in the property at the time of the loss was as owner thereof and that no other person had an interest therein except Konkel and Greco; and noted the $10,300 insurance policy obtained from the Gulf Insurance Company. On August 8, the defendant company, through their attorneys, advised Flickinger that his proof of loss was defective because it stated that he was the insured and that no assignment of the policy had been made, whereas the policy showed Greco to be the insured; and also because it stated that he was the owner of the property and at the same time stated that no change in interest in the property had occurred since the issuance of the policy. Thereupon, the attorneys for Flickinger and for the insurance company exchanged communications which, in substance, resulted in a declaration by the latter of their belief that the defendant company was not liable to Flickinger because he was the owner of the property and had not obtained its consent to an assignment of the policy to him before the loss occurred. Thereafter, Flickinger filed another but similar proof with the defendant in which he stated that the policy had been assigned to him by Greco through the aforesaid escrows. Forthwith the company denied Flickinger's claim upon the ground that it never had consented to the assignment. It should be noted that, at all times since June 24, 1958, the defendant had full knowledge of the true situation respecting the status of the property. Under date of November 24, Greco filed a proof of loss in which he stated, among other things, that at the time of the fire the property was in the ''process of being sold to Judson Flickinger.'' This proof of loss was rejected because it was not filed in time as well as for other reasons. Thereupon Flickinger, Greco and Konkel brought the present action for declaratory relief, resulting in a judgment against the

company in favor of Flickinger for the policy amount of $7,200, from which the present appeal was taken.

The defendant contends that the judgment should be reversed because (1) Flickinger was the owner of the premises at the time of the fire and the company had not consented to an assignment of the policy to him; (2) that Greco was a "mortgagee" within the meaning of the policy and under its terms the defendant was subrogated to his mortgage claim against the "mortgagor," Flickinger, and that Greco destroyed this right of subrogation by acceptance of a payment upon his mortgage, and for this reason he may not recover upon the policy; (3) in a contradictory vein, that Greco, as owner and vendor of the subject premises, had a cause of action against Flickinger, which Flickinger could not avoid on account of the fire because he had gone into possession of the property and thereby assumed any risk of loss by fire, and that the company was entitled to this cause of action under the principle of equitable subrogation but Greco destroyed it by accepting payment and, therefore, is barred from recovery upon his policy; (4) that Greco's insurable interest at the time suit was filed had been reduced to $1,000 and any recovery by him should be limited to this amount; (5) that Greco was guilty of misrepresentation and false swearing in his proof of loss which voided the policy; (6) that he failed to file his proof of loss within time; and (7) that Flickinger was not the real party in interest.

The trial court found that Greco was the owner of the premises in question at the time of the fire. This finding is fully supported by the evidence.

"It is the general rule that where conditions fixed for delivery of a deed are not such as are certain to happen, merely depositing the deed with an escrow holder does not pass title to the grantee." (*Vierneisel* v. *Rhode Island Ins. Co.,* 77 Cal.App. 2d 229, 231 [175 P.2d 63]; *Estate of Erskine,* 84 Cal.App.2d 323, 331 [190 P.2d 659].)

In this case, although Greco had deposited his deed in escrow, the transaction was subject to completion of the Konkel loan and the issuance of a policy of title insurance; his deed had not been delivered to the named grantee before the fire occurred; and, therefore, he was the owner at that time. The defendant company contends that a different rule should apply here because the grantee had gone into possession of the property. This contention is not factually sound. The escrow instructions merely provided that the rents should be

prorated as of June 1; there was no agreement that the grantee might take possession on that date; and there is no evidence that Ream and Fink attempted to exercise any right to possession of the property. Although the evidence shows that Fink collected rent from one of the tenants for the month of June, this did not require a finding that he took possession. At the most such evidence only would support an inference of possession, and by its finding of ownership in Greco at the time of the fire the trial court rejected this inference and accepted the equally tenable inference that Flickinger only was effecting a contemplated prorating of the rents. ▉▉▉ In the exercise of a sound legal discretion, the trial court may draw or refuse to draw inferences reasonably deducible from the evidence (*Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868]; *Juchert* v. *California Water Service Co.*, 16 Cal.2d 500, 507-508 [106 P.2d 886]; *Church of Merciful Saviour* v. *Volunteers of America*, 184 Cal.App.2d 851, 857 [8 Cal.Rptr. 48]); and, on appeal, those inferences in support of a finding will be accepted whereas those in support of a contrary conclusion will be rejected. (*Hamilton* v. *Pacific Elec. Ry. Co.*, 12 Cal.2d 598, 602 [86 P.2d 829]; *Wilbur* v. *Wilbur*, 197 Cal. 1, 7 [239 P. 332]; *Church of Merciful Saviour* v. *Volunteers of America*, *supra*, 184 Cal.App.2d 851, 856.)

The foregoing observations dispose of all of the contentions of the defendant based on the claim that Flickinger was the owner of the property at the time of the fire and that Greco was his mortgagee.

It thus appears that Greco, as the insured under the policy and the owner of the premises at the time of the fire, was entitled to recover thereunder except for intervening impediments, if any.

The apparent simplicity of the ultimate facts in this case is tempered by the confusion incident to a misconception of the legal consequences attaching to the events upon which these facts are predicated by those involved, and their ensuing conduct. The escrow officer undoubtedly believed that a transfer of the fire policy from Greco to Flickinger would be a mere formality; the defendant's adjuster did not appreciate the legal significance of the transaction and advised Flickinger that a proof of loss would be prepared in due time; the attorneys for Flickinger, apparently believing that he had to be the owner in order to recover on the Gulf Fire Insurance Company policy, proceeded on the basis that in substance he was the owner; and the attorneys for the defendant company, who

were fully acquainted with the factual situation, accepted the theory that the sale had been consummated before the fire and advised their company to reject Flickinger's claim upon the ground that he had not obtained its consent to an assignment of the policy. Actually, the parties to the escrows had agreed, in substance, that Flickinger should have the proceeds from the Greco policy of insurance. This was the conclusion of the trial court which found that the interest of Greco in his policy had been assigned to Flickinger after the loss occurred.

The policy by its own terms, insofar as it involved the substitution of one insured for another, was not assignable without the consent of the insurer. Any purported assignment of such a policy without consent is ineffective. (*Bergson* v. *Builders' Ins. Co.*, 38 Cal. 541, 545; *Shuggart* v. *Lycoming Fire Ins. Co.*, 55 Cal. 408.) On the other hand, it is settled that the right to recover thereon after loss has occurred is assignable without company consent. (*Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654, 661-662 [328 P.2d 198]; *Vierneiscl* v. *Rhode Island Ins. Co.*, supra, 77 Cal.App.2d 229, 232.) The former situation involves the obligation of the insurance company to indemnify a particular person against loss; the selection of its indemnitee properly is a matter of its own choice. The latter situation involves only the payment of a claim founded upon a loss against which the policy indemnifies, and the designation of a payee of such claim properly is a matter left solely to the discretion of the indemnitee, viz., the insured. (*Bergson* v. *Builders' Ins. Co.*, supra, 38 Cal. 541, 543.) The evidence in this case leaves no doubt that the parties to the subject escrow intended that Greco's policy should be transferred to Flickinger. Until the fire occurred the proposed assignment contemplated a transfer of the indemnity agreement evidenced by that policy. However, after the fire the subject of coverage no longer existed; it had been destroyed; and the subsequent dealings of the parties in this area must have contemplated the right to collect the proceeds payable under that policy. Immediately after the fire, Flickinger asked the defendant's adjuster what had to be done to complete the adjustment of the fire loss; inquired of the escrow agent if he was covered, "or if the property was covered under that policy"; was told that the escrow company "had no problems with the assignment of insurance policies under escrows"; and that he "had every reason to expect to be covered under that policy"; and thereafter he deposited sufficient funds

in escrow to close the transaction. The trial court found that Flickinger "completed and consummated the escrow agreement in reliance upon and with the understanding that he was to receive the insurance proceeds." This finding is amply supported by an inference reasonably deducible from the evidence. After the deeds had been delivered and recorded, the escrow agent forwarded the policy to the insurance company's agent and, acting under a mistaken concept of the legal effects of the events heretofore noted, gave notice that the policy had been transferred as of June 1, and requested ratification of that transfer. On August 6, Flickinger filed a proof of loss seeking recovery under the policy. It is of little consequence that in filling out the prescribed form Flickinger described himself as the insured and stated that at the time of loss he was the owner of the subject property. The form was not styled to proof by an assignee of the proceeds of a policy. Although the indemnity contract had not been transferred before the fire, because the defendant company had not consented thereto, and also because any assignment did not become effective until close of escrow, the court was entitled to find that the right to collect the proceeds under that policy had been transferred after the fire, viz., at the time of completion of the escrow. The accrued right to collect the proceeds of the fire insurance policy is a chose in action, and an effective assignment thereof may be expressed orally as well as in writing (*Hibernia Sav. & Loan Soc.* v. *Belcher*, 4 Cal.2d 268, 275 [48 P.2d 681]; *Oswald* v. *Schwartz*, 181 Cal. 620, 624 [185 P. 959]); may be the product of inference; and where the parties to a transaction involving such a policy by their conduct indicate an intention to transfer such proceeds, the courts will imply an assignment thereof. (*Guggenhime & Co.* v. *Lamantia*, 207 Cal. 96, 99 [276 P. 995]; *Adamson* v. *Paonessa*, 180 Cal. 157, 164 [179 P. 880]; *Goldman* v. *Murray*, 164 Cal. 419, 422 [129 P. 462]; *Walmsley* v. *Holcomb*, 61 Cal.App.2d 578, 584 [143 P.2d 398]; *Mutual Life Ins. Co.* v. *Henes*, 8 Cal.App.2d 306, 311 [47 P.2d 513].) In making such a determination, substance and not form controls. (*Bergin* v. *van der Steen*, 107 Cal.App.2d 8, 16 [236 P.2d 613]; *Long* v. *Thompson*, 45 Cal.App.2d 161, 169 [113 P.2d 698].) In the case at bar, the evidence fully supports an implied assignment; the subject matter of the policy was nonexistent when the escrow was closed; and the transfer of that policy at that time, instead of being an assignment of the contract of indemnity, was an assignment

684

of the chose in action to collect for the loss occasioned by the destruction which had occurred. The intention of the parties to effect such a transfer is corroborated by a written assignment executed by Greco on August 20. The court found that the interest of Greco under the policy had been assigned to Flickinger after the fire on June 7th. It is noteworthy that this finding did not specifically fix the date of this assignment. On appeal findings must be construed in support of the judgment (*Richter* v. *Walker*, 36 Cal.2d 634, 639 [226 P.2d 593]; *Johndrow* v. *Thomas*, 31 Cal.2d 202, 207 [187 P.2d 681]); and it will be assumed in support of the judgment in this case that the assignment referred to in the finding in question was implied from the conduct of the parties and occurred upon the close of escrow. This conclusion follows from "the rule that 'in the absence of indications to the contrary, a general finding includes a finding of all the special facts necessary to sustain it.' " (*Albonico* v. *Madera Irr. Dist.*, 53 Cal.2d 735, 741 [350 P.2d 95].)

 Within the 60-day period prescribed by the policy, Flickinger filed a proof of loss. His implied assignment carried with it the right to do whatever was necessary to prove his claim under the policy. (Civ. Code, § 1084; *National R. Co.* v. *Metropolitan T. Co.*, 17 Cal.2d 827, 832-833 [112 P.2d 598]; *Marx* v. *McKinney*, 23 Cal.2d 439, 443 [144 P.2d 353].) The proof of loss thus filed was upon a form prescribed by the company; supplied the information elicited by its use; and was correct in every detail except as to the following statements, viz., (1) that at the time of loss the company insured Flickinger under the policy theretofore issued; (2) that he was the owner of the property; (3) that Konkel and Greco were encumbrancers thereof; and (4) that since issuance of the policy no assignment thereof had been made and no change of interest or possession of the property had occurred. The policy only required that the proof of loss should state "the knowledge and belief of the insured" with respect to these matters. The insurance company replied to this proof with a communication dated August 8th, indicating that the proof was defective because the statements were inconsistent with the fact that the policy had been issued to Greco, as owner of the premises. At the time this proof of loss was filed the insurance company had been furnished with copies of all of the principal documents in the two escrows and was fully informed as to the true facts. Also at this time, the company knew that its adjuster had been told by Flickinger

that he thought he was the owner of the premises but was not sure, and that he wanted to know what steps had to be taken to complete the proof of loss forms. On November 13, by letter, the company denied Flickinger's claim on the ground that it had not consented to any assignment of the policy to him. During all of this time not only did the company know that Flickinger was not the insured at the time of the loss, but it also knew that he claimed the insurance proceeds by virtue of the escrow transaction. No objection was made to the proof of loss filed by Flickinger on the ground that it was not made by Greco and, as a consequence, any such objection was waived. (Ins. Code, § 553; *Fohl* v. *Metropolitan Life Ins. Co.*, 54 Cal.App.2d 368, 383 [129 P.2d 24].) Actually, the objection urged by the defendant is not that a proof of loss was not filed by Flickinger in time, but that the proof of loss filed did not show that the claimant was entitled to recover. However, because Flickinger stated in his proof that he was an assignee of the policy instead of saying that he was an assignee of the proceeds of the policy should not foreclose his recovery. (*Miller* v. *Fireman's Fund Ins. Co.*, 6 Cal.App. 395, 398 [92 P. 332].) Under the facts in this case the inaccuracies contained in the proof of loss did not destroy its effectiveness; the defendant had notice of the fire; had an opportunity to adjust the loss therefrom immediately thereafter; actually made an appraisal of such loss; and was furnished with full information concerning the status of the property, the insurable interest of Greco as insured, the claim of Flickinger as assignee, and the additional insurance furnished the latter as vendee. Furthermore, the defendant denied liability on the ground that Flickinger was not the insured at the time of the fire and not because of the insufficiency of the proof of loss. Such a denial of liability waived the proof of loss requirements. (*Dietlin* v. *General American Life Ins. Co.*, 4 Cal.2d 336, 350 [49 P.2d 590]; *Lagomarsino* v. *San Jose etc. Title Ins. Co.*, 178 Cal. App.2d 455, 460 [3 Cal.Rptr. 80]; *Lincke* v. *Mutual Benefit etc. Assn.*, 76 Cal.App.2d 222, 231 [172 P.2d 912]; *Trousdell* v. *Equitable Life Assur. Soc.*, 55 Cal.App.2d 74, 84 [130 P.2d 173, 990]; *Francis* v. *Iowa Nat. Fire Ins. Co.*, 112 Cal. App. 565, 571 [297 P. 122]; *Estrada* v. *Queen Ins. Co.*, 107 Cal.App. 504, 510 [290 P. 525]; *Hutchings* v. *Southwestern Automobile Ins. Co.*, 96 Cal.App. 318, 321-322 [274 P. 79].) The trial court found that these requirements had

been waived. Upon the ground that a waiver may not be relied upon unless pleaded (*Kohner* v. *National Surety Co.*, 105 Cal.App. 430, 437 [287 P. 510]), the defendant contends that this finding was error. However, the issue of waiver was presented to, tried and decided by the trial court; no objection was made to its consideration or to the evidence in support thereof; under these circumstances the pleading failure will not be accepted as ground for reversal. (*Vaughn* v. *Jonas*, 31 Cal.2d 586, 605 [191 P.2d 432].)

The contention that Greco was guilty of concealment and misrepresentation which voided his policy is without merit. This contention is based on statements in Greco's proof of loss concerning the status of the property. The trial court found no such concealment or misrepresentation, and the evidence supports this finding without equivocation.

The further claim that Greco defeated the defendant's right to be subrogated to his claim as a vendor against Flickinger as a vendee also is without merit. The subrogation contention is based on the premise that Flickinger went into possession of the subject property; thereby assumed any risk of loss incident to destruction by fire; and that, before and after the fire, Greco was entitled to recover from Flickinger the full contract price which the latter had agreed to pay. However, the trial court did not find that Flickinger took possession of the property; the escrow agreements provided merely that the rents should be prorated as of June 1st and not that the purchaser should have possession as of that date; consequently, the defendant's contention is without factual support and for this reason we need not consider the correctness of the legal proposition advanced.

The claim that Greco's insurable interest was limited to $1,000 is based on the fact that Flickinger has paid him all but that amount on his, Greco's, note and trust deed. This payment took place after the fire. When the loss occurred Greco was the owner of the property insured subject to an agreement to sell for $10,935.83; this was an insurable interest; and the status of an insured's interest at the time of loss, rather than at some subsequent time, controls when applying the requirements of the law in the premises. (Ins. Code, § 286; *Fageol T. & C. Co.* v. *Pacific Indemnity Co.*, 18 Cal.2d 731, 744 [117 P.2d 661]; *White* v. *Gilman*, 138 Cal. 375, 377 [71 P. 436].)

The defendant contends that Flickinger is not the real party in interest and for this reason the judgment in his

favor should be reversed. This contention is based on the uncontradicted testimony of Flickinger that he assigned his interest in the insurance proceeds to Fink as security for the promissory note given the latter in connection with the sale. Under these circumstances, Fink was the real party in interest and the trial court's finding to the contrary is not supported by the evidence. (*Bridge* v. *Connecticut Mut. Life Ins. Co.*, 167 Cal. 774, 777 [141 P. 375]; *Iowa & Calif. Land Co.* v. *Hoag*, 132 Cal. 627, 630 [64 P. 1073]; *Philbrook* v. *Superior Court*, 111 Cal. 31, 34 [43 P. 402].) ▮ The plaintiff in a suit upon a chose in action, to qualify as the real party in interest, must have such a title thereto that a judgment against the defendant will protect the latter from future annoyance or loss. (*Anheuser-Busch, Inc.* v. *Starley*, 28 Cal.2d 347, 352 [170 P.2d 448, 166 A.L.R. 198]; *Iowa & Calif. Land Co.* v. *Hoag, supra*, 132 Cal. 627, 630; *Giselman* v. *Starr*, 106 Cal. 651, 657 [40 P. 8].) ▮ The assignee of a chose in action has such a title and is a necessary party to any suit thereon, even though he may hold it for security purposes only. (*Bridge* v. *Connecticut Mut. Life Ins. Co., supra*, 167 Cal. 774, 777; *Philbrook* v. *Superior Court, supra*, 111 Cal. 31, 34.) ▮ On the other hand, the assignor thereof, although a proper party to such a suit, is not a necessary party. (*Stackpole* v. *Pacific Gas & Elec. Co.*, 181 Cal. 700, 702 [186 P. 354]; *Webb* v. *Casassa*, 82 Cal.App. 307, 312 [255 P. 541].) ▮ Failure to join a necessary party is reversible error. (*Bowles* v. *Superior Court*, 44 Cal.2d 574, 583 [283 P.2d 704].) ▮ However, if an assignee consents that the suit be brought by his assignor, an objection that the plaintiff is not the real party in interest will not be ground for reversal because the defendant is fully protected from future action, and the purpose of any objection to the suit upon that ground has been served. (*Consolidated Nat. Bank* v. *Hayes*, 112 Cal. 75, 82 [44 P. 469]; *Mosier* v. *Suburban Estates, Inc., Ltd.*, 137 Cal.App. 574, 576 [31 P.2d 209]; *Reidy* v. *Young*, 119 Cal.App. 322, 324 [6 P.2d 112].) ▮ Moreover, if the assignment occurs after suit has been filed the action may be continued in the name of the assignor, or the court may permit the assignee to be substituted therein. (Code Civ. Proc., § 385), and a judgment in favor of the assignor under these circumstances, when no change of party plaintiff has occurred, will be sustained. (*McCartney* v. *Campbell*, 208 Cal. 647, 648 [284 P. 220]; *McLane* v. *Storr*, 75 Cal.App.2d 459, 463 [171 P.2d 534].) ▮ In the case at bar unless Fink had been joined as a party to the

action, gave his consent thereto, or the assignment occurred after commencement thereof, a judgment in favor of Flickinger would not protect the defendant from a future action by Fink. Flickinger claims that Fink did consent to the action but there is no evidence in support of this contention. He also claims that the assignment occurred after suit was filed, but the only evidence respecting this fact indicates that it occurred in the month before suit was filed. As these claims cannot be sustained upon the record before us, the judgment must be reversed in order that proper proceedings may be taken with respect to this issue.

The judgment is reversed and remanded for a new trial on the sole issue as to who is the real party plaintiff in interest; the trial court is directed to make its order setting aside the judgment; to strike from the findings of fact heretofore made the finding that the plaintiff Flickinger is the real party in interest herein; to take such further proceedings as may be appropriate with respect to the issue whether Flickinger is the real party in interest or whether the assignee Fink should be joined as a party; to make a finding of fact and conclusion of law on that issue in accord with the evidence and the law in the premises; and thereupon to enter judgment in accord with that finding of fact and conclusion of law together with the findings of fact and conclusions of law heretofore made. Each party will bear his or its own costs.

Griffin, P. J., and Shepard, J., concurred.