[L. A. No. 4627. Department One.—March 19, 1919.]

JOHN Z. ADAMSON, Plaintiff and Respondent, v. GEORGE C. PAONESSA et al., Defendants and Respondents; THE NATIONAL SURETY COMPANY (a Corporation), Defendant and Appellant.

[1] STREET LAW — PAYMENT OF CLAIMS BY SURETY ON CONTRACTOR'S BOND—SUBROGATION.—Payment by the surety on the bond of a street contractor of claims for material furnished and labor performed under the contract, works a subrogation in the surety's favor of any rights which the claimants had.

[2] ID.—IMPROVEMENT ACT OF 1911 — RIGHTS OF MATERIALMEN AND LABORERS—PERSONAL RECOVERY AGAINST CONTRACTOR AND SURETY. Under the Improvement Act of 1911 (Stats. 1911, p. 730), persons performing labor and furnishing materials in the performance of the work, have no rights against the moneys or bonds due under the contract on the completion of the work, but are limited to a personal recovery against the contractor and to a recovery upon his bond in payment of their claims, and, therefore, there is no subrogation of their rights or liens upon such moneys and bonds.

[3] ID.—REMEDY OF MATERIALMEN AND LABORERS—INTENTION OF ACT. It was the intention of the Improvement Act of 1911 that parties furnishing materials or labor to a contractor doing work under a contract let in accordance with the act must look solely to the contractor's personal responsibility and to the bond which the statute requires him to furnish.

[4] MECHANICS' LIENS — WITHHOLDING OF MONEY UPON NOTICE — APPLICABILITY OF CODE AMENDMENT.—The provisions of section 1184 of the Code of Civil Procedure, as amended in 1911, as to the withholding of money by the owner from the contractor upon notice given by a person furnishing material or performing labor, are clearly applicable only to cases where the contractor is to be paid either by the owner of the property upon which the work is done,

or by the person, public or private, by whom the contract was made, and cannot be applied where payment is not to be made in that manner, but is to be made by a number of different persons not parties to the contract, each of whom pays independently his separate share of the amount due.

[5] STREET LAW—ASSIGNMENT OF CONTRACT—PRIORITIES.—An assignment by a street contractor of all his rights under the contract in consideration of the advancement of moneys to him during the progress of the work, is prior in right, although subsequent in time, to an assignment made to the surety on the contractor's bond, where the surety neglected to give immediate notice to the city of the assignment, and before it did so, the second assignee took the assignment without notice or knowledge of the first assignment and gave immediate notice thereof to the city.

[6] ASSIGNMENT—RIGHTS OF SUCCESSIVE ASSIGNEES WITHOUT NOTICE. As between successive assignees of a chose in action, he will have the preference who first gives notice to the debtor, even if he be a subsequent assignee, provided at the time of taking his assignment he had no notice of a prior assignment.

[7] STREET LAW—ASSIGNMENT OF CONTRACT—SECURITY FOR ADVANCEMENT OF MONEYS — RIGHTS OF SURETY UNDER ANOTHER ASSIGNMENT.—Where an assignment of a street contract is made only as security for advances of money to complete the contract, the contractor still has an interest in the moneys and bonds to be paid for the work, and the surety on his bond under another assignment has an interest therein.

[8] ID.—WRITTEN APPLICATION FOR BOND—PROVISION AS TO DISPOSITION OF MONEYS—ASSIGNMENT.—A provision in a written application to a surety company for a bond by a street contractor that all payments specified in the contract for the work shall be withheld by the obligee until the completion of the work, and, upon such completion, paid to the surety, and that such provision shall operate as an assignment thereof, and the residue, if any, after reimbursing the surety, paid to the contractor, is, although inaptly expressed, sufficient to operate as an assignment of the interest of the contractor in the bonds to be paid for the work.

APPEAL from a judgment of the Superior Court of San Bernardino County. H. T. Dewhirst, Judge. Affirmed in part. Reversed in part.

The facts are stated in the opinion of the court.

Benjamin E. Page, Arthur C. Hurt and Arthur F. Coe for Defendant and Appellant.

Edwin A. Meserve, Shirley E. Meserve and F. C. Austin for Defendant-Respondent Charles W. Lloyd.

Oscar Lawler and James E. Degnan, *Amici Curiae.*

LAWLOR, J.—This is an appeal from a judgment in an interpleader suit in favor of one of the defendants and claimants as against the other defendant and claimant. There is practically no conflict in the evidence and the material facts are as follows:

One Paonessa entered into a contract with the city of Colton for the doing of certain street work under the "Improvement Act of 1911." (Stats. 1911, p. 730.) As a condition of the contract he was required by the statute to give, and did give, a surety bond for the payment of claims for materials furnished or labor performed in the doing of the work. The appellant, National Surety Company, was the surety on this bond. In order to obtain the bond the contractor, Paonessa, made a written application to the Surety Company which, by its terms, constituted a contract between them. The portion of this application contract material here reads: "All payments specified in the above-mentioned contract [i, e., the contract with the city of Colton for the doing of the work] to be withheld by the obligee until the completion of the work, shall, as soon as the work is completed, be paid to the company, [i. e., the surety company] and this covenant shall operate as an assignment thereof and the residue, if any, after reimbursing the company as aforesaid, be paid to the applicant after all liability of the company has ceased to exist under said bond." No notice of this assignment, if it be such, was given to the city of Colton, or so far as appears, to anyone else, until shortly before the commencement of this litigation.

While the work was in progress the other defendant, the respondent here, one Lloyd, advanced certain sums of money to the contractor, Paonessa, and took from him an assignment of all his rights under the contract, all without notice of the prior assignment to the Surety Company and in complete ignorance of it. This assignment Lloyd filed with the city clerk immediately.

The proceedings under which the contract was let provided, as permitted by the statute, for payments in street improve-

ment bonds. Upon the completion of the contract, the city authorities, recognizing Lloyd as the assignee of Paonessa, delivered to him the warrant and assessment for the payment of the work and the city treasurer was about to issue to him street improvement bonds in payment when the Surety Company demanded of the city treasurer the issuance of the bonds to it. This was the first notice to the city authorities of any claim of assignment to the Surety Company.

In the meantime, Paonessa had failed to pay claims approximating ten thousand dollars for material and labor furnished and rendered in completing the contract. The Surety Company was obligated under its bond to pay these claims and did so. No claim is made by the respondent that such payment was not pursuant to the obligation of the bond and in strict accord with it.

Upon the Surety Company demanding the issuance of the bonds to it and Lloyd insisting that they be issued to him, the city treasurer interpleaded the two claimants and deposited the bonds in court. A trial was had and judgment was rendered against the Surety Company in favor of Lloyd that the bonds be delivered to the latter.

The contention of the Surety Company that the judgment is erroneous and that it is entitled to the bonds, or at least to sufficient thereof to reimburse itself for the amounts which it paid to materialmen and laborers, is twofold.

The first ground advanced is that by virtue of its payments as surety for Paonessa of the claims against him for materials and labor furnished, it acquired by subrogation an equitable lien upon any moneys or bonds due under the contract in payment for the work superior to any assignment or other disposition which Paonessa might have made. [1] There is no doubt but that the payment by the Surety Company pursuant to its obligations as surety would work a subrogation in its favor of any rights which the claimants had whose claims were paid. It is equally clear that the subrogation would give no further rights than this. What rights, therefore, had these materialmen and laborers against the moneys or bonds that were due under the contract on the completion of the work? If they had none, and if their rights were limited to a personal recovery against Paonessa and to a recovery upon the bond given by the Surety Company, it is clear that there was nothing upon which the subrogation could

work.  [2]  Such we believe to be the case under the "Improvement Act of 1911," under which the work was done.

The only provision in the act of 1911 providing security to materialmen and laborers for the payment of their claims is section 19.  This section requires that every contractor to whom a contract is awarded under the act must file with the superintendent of streets a good and sufficient bond inuring to the benefit of any and all persons performing labor on or furnishing materials used in the work or improvement. There is no provision which gives such claimants any right or lien, equitable or otherwise, upon money or bonds coming to the contractor.  In particular, there is no provision in the act authorizing or permitting the retention by the municipality, or by the owners whose lands are assessed, of anything which may be due the contractor in order to pay the claims of materialmen or laborers, or permitting the deduction of the amount of such claims from anything that may be due the contractor.  [3]  We are constrained to believe that it was the intention of the statute that parties furnishing materials or labor to a contractor doing work under a contract let in accordance with this act, must look solely to the contractor's personal responsibility and to the bond which the statute requires him to furnish.

This construction of the statute is strengthened by a consideration of the method of payment contemplated by it.  It contemplates that the contractor be paid directly by the property owners whose property is assessed for that purpose, each paying for himself his own assessment, and this whether the payment be in money or in bonds.  It is true that any property owner may discharge the assessment on his property by making payment to the city treasurer, but the act clearly contemplates that the city treasurer in such case is merely acting as a convenient means or conduit whereby the property owner may make payment to the contractor.  Essentially the payment is one by each property owner directly to the contractor.

It is manifest that under such circumstances there is no single fund out of which the contractor is to be paid, and it is likewise clear that in view of the fact that payment may be made to the contractor without the interposition of the city treasurer or any other city official or common conduit of payment, any right to have moneys or bonds coming to a

contractor retained in order to meet claims against the contractor would be quite impracticable. The act provides no machinery by which the amount to be retained from the payment by the property owner can be ascertained or he be notified of the amount he is to retain.

[4] The result so arrived at is not affected by the provisions of section 1184 of the Code of Civil Procedure. That section, as amended in 1911, provides for the giving of notice by any person who has performed labor or furnished materials under a contract, and then continues as follows: "Upon such notice being given it shall be lawful for the owner to withhold, and in the case of property which, for reasons of public policy or otherwise, is not subject to the liens in this chapter provided for, the owner or person who contracted with the contractor, shall withhold from his contractor sufficient money due or that may become due to such contractor to answer such claim and any lien that may be filed therefor including the reasonable cost of any litigation thereunder." This provision is clearly applicable only to cases where the contractor is to be paid either by the owner of the property upon which the work is done, or by the person, public or private, by whom the contract was made. It cannot be applied where payment is not to be made in that manner, but is to be made by a number of different persons not parties to the contract, each of whom pays independently his separate share of the amount due.

Right here also lies the difference between the present case and the line of authorities cited by appellant's counsel, beginning with *Prairie State Nat. Bank* v. *United States,* 164 U. S. 227, [41 L. Ed. 412, 17 Sup. Ct. Rep. 142]. In those decisions the facts are essentially the same as in this, with the exception that either by statute or by the contract itself, a fund was in effect reserved for the benefit of materialmen and laborers whom the contractor might fail to pay. In other words, the materialmen and laborers had a right as against a certain fund in addition to any recovery against the contractor or his surety. Under such circumstances if the surety paid their claims he would be subrogated to their rights against such fund. Such, however, is not the case here, as there is no fund against which the materialmen and laborers have a right.

The second point made by the appellant is that by virtue of the provision heretofore quoted of the application contract executed by Paonessa, he assigned to the appellant his right to the bonds subsequently to become due him under the contract and that this assignment, being prior in time to the assignment by Paonessa to Lloyd, is prior in right.

[5] Passing for the time being the question as to the sufficiency of the contract provision as an assignment by Paonessa, it does not follow that because it is prior in time it is necessarily prior in right to the subsequent assignment to Lloyd. The Surety Company neglected to give immediate notice of the assignment to it, and before it gave such notice Lloyd had taken an assignment for a valuable consideration without notice or knowledge of the prior assignment and had given notice of his own assignment. The rule in such a case is well established. It is thus stated in *Widenmann* v. *Weniger*, 164 Cal. 667, 672, [130 Pac. 421, 424]: "The effect of such successive assignments and the rights of the successive assignees without notice, with respect to each other, were considered and decided in *Graham Paper Co.* v. *Pembroke*, 124 Cal. 117, [71 Am. St. Rep. 26, 44 L. R. A. 632, 56 Pac. 627]. There is some conflict of authority on the subject but this court approved and followed the English rule stated as follows: [6] 'As between successive assignees of a chose in action, he will have the preference who first gives notice to the debtor, even if he be a subsequent assignee, provided at the time of taking it he had no notice of a prior assignment.' "

The judgment of the lower court, therefore, in directing the delivery of the bonds to Lloyd was correct and to that extent is affirmed.

The judgment of the lower court, however, goes further than this. The court found, and its judgment decrees, that the Surety Company has no right or interest in the bonds. The evidence at the trial showed without conflict that Lloyd took his assignment by way of security for advances. It follows that as between himself and Paonessa he was not the absolute owner of the bonds. Paonessa still had an interest in them. [7] If, then, the application contract executed by Paonessa did in fact amount to an assignment by him to the Surety Company, the latter stood in the former's shoes and had and still has an interest in the bonds, and the finding of the court to the contrary is not supported by the evidence. This brings

us to the question of the sufficiency of the application contract as an assignment by Paonessa to the Surety Company. If it amounts to an assignment, the finding that the Surety Company has no interest in the bonds is contrary to the evidence and the decree of the court to the same effect is in that particular incorrect.

Considering this question, certain it is that as applied to these bonds the language of the application contract is exceedingly inapt. The subject matter of the purported assignment is described as "all payments specified in the above-mentioned contract to be withheld by the obligee until completion of the work." But, as we have seen, there are no payments to be withheld. The provision in question is one very evidently intended for cases' of contracts containing the ordinary provisions for the retention of a part of the contractor's compensation to answer for claims against him. Such is not this case. Nevertheless, the language must be construed with reference to the particular facts of the particular case, and if the intention of the parties is fairly evident and they have actually given expression to it, no matter how inapt that expression may be, effect must be given to their intention. Furthermore, the language must be construed as if the question were one between the Surety Company and Paonessa, and between them solely. [8] Looking at the matter from this point of view we believe that as between Paonessa and the Surety Company the language in question, inapt though it is, would be sufficient to entitle the latter to claim and receive the bonds in dispute as against the former. It is fairly evident that it was the intention of the parties that the Surety Company in order to secure it against its liability on the contractor's bond should have the right to receive on the completion of the contract any payments that might be coming to him. The designation of such payments as "payments *to be withheld by the obligee* until the completion of the work" seems to us to be rather a case of imperfect description than one where the parties have actually failed to give expression to their intention, so that it is beyond the power of the court to give effect to it by construction. It follows that the Surety Company did have an interest in the bonds to be delivered to and held by Lloyd and that the finding and decree of the lower court to the contrary are not in this respect correct.

While there is no conflict in the evidence bearing on the point under immediate discussion and the facts establishing the rights of the parties appear clearly and without dispute, yet there is no finding in accordance with the evidence upon which this court can direct a modification of the decree in this respect. A further hearing upon this point is necessary in order that such finding be made.

The judgment of the lower court is therefore modified by striking out the portion which decrees that the appellant has no right or interest in the bonds; and a new trial is ordered on the single issue as to whether or not as between himself and the Surety Company the respondent Lloyd holds the bonds as absolute owner or by way of security merely.

Both prior to the commencement of the litigation and at the time of the trial respondent Lloyd offered to account to the Surety Company for any balance which he might receive from the bonds after the satisfaction of his own advances. This was all that the Surety Company was entitled to. Accordingly, although the judgment is reversed in part and a new trial is directed as to one of the issues, it is ordered that appellant pay the costs of appeal.

Olney, J., and Shaw, J., concurred.

Hearing in Bank denied.

All the Justices concurred.