[L. A. No. 5379.    In Bank.—April 25, 1921.]

LOS ANGELES ROCK AND GRAVEL COMPANY (a Corporation), Plaintiff and Respondent, v. COAST CONSTRUCTION COMPANY (a Corporation), et al., Defendants.

AMERICAN SURETY COMPANY OF NEW YORK (a Corporation), Cross-complainant and Respondent, v. EMPIRE SECURITIES COMPANY (a Corporation), et al., Defendants to Cross-complaint and Appellants; LOS ANGELES ROCK AND GRAVEL COMPANY (a Corporation), et al., Defendants to Cross-complaint.

[1] STREET LAW—VROOMAN ACT—CLAIMS OF MATERIALMEN AND LABOR-ERS—WITHHOLDING WARRANT.—There is no provision in the Vrooman Act for the withholding of the warrant until the claims of materialmen and laborers have been discharged, nor is there any provision which gives such claimants any right or lien, equi-table or otherwise, upon money or bonds going to the contractor.

[2] ID.—COMPLETE PLAN OF VROOMAN ACT—SECTION 1184 OF THE CODE OF CIVIL PROCEDURE INAPPLICABLE.—The Vrooman Act pro-vides a comprehensive, self-sufficient, and exclusive plan for the improvement of streets, etc., which covers not only the doing of the work and the protection of laborers, materialmen, the city and owners of property, but likewise provides a complete and com-prehensive scheme for the payment of the contractor which is irreconcilable with any process for withholding the funds such as that provided in section 1184 of the Code of Civil Procedure, which section is limited to persons mentioned in the preceding section, none of whom are persons performing labor or furnishing materials for work of the character of that dealt with by the Vrooman Act.

[3] ID.—ASSIGNMENT OF CONTRACT—RIGHTS OF ASSIGNEE—CONTRAC-TOR'S SURETY.—The funds due the contractor upon completion of work contracted for under the Vrooman Act, being free from any claim or lien of materialmen or laborers, the contractor's surety on the bond issued under the provisions of the act for the pro-tection of materialmen and laborers cannot trace any claim thereto through such creditors of the contractor to the prejudice of intervening *bona fide* assignees of the said funds.

[4] ID.—RIGHT OF SURETY TO COMPEL PRINCIPAL TO PERFORM—SU-PERIOR RIGHT OF ASSIGNEE OF CONTRACT.—Under the principle that the surety may proceed in equity to compel the principal to

perform his obligation when due, a surety on a contract for improvements under the Vrooman Act cannot compel the contractor to pay the claims of materialmen and laborers from the assessments to be collected under the contract, where the right to the proceeds of the contract had, by assignment for a valuable consideration, passed to a third party prior to the surety's attempt to reach them without knowledge on the part of the assignee that any claim would not be paid by the contractor.

[5] Id.—Agreement to Turn Over Work Free of Claims—Rights of Assignee.—A clause in a contract for improvements under the Vrooman Act providing that the contractor is to turn over the work free and clear of all claims of laborers and materialmen does not give materialmen and laborers or the surety on the contract the right to resort to the proceeds of the contract for payment of their claims as against a prior assignee of the proceeds of the contract.

APPEAL from a judgment of the Superior Court of Los Angeles County. Grant Jackson, Judge. Reversed.

The facts are stated in the opinion of the court.

Crouch & Crouch, George W. Crouch, Donald Barker, James M. O'Brien and Wm. H. Neblett for Appellant Empire Securities Company.

Albert Lee Stephens, City Attorney, and Henry N. James, Deputy City Attorney, for Appellant City of Los Angeles.

Oscar Lawler and James E. Degnan for Respondent American Surety Company of New York.

LENNON, J.—The plaintiff, who claims to have furnished materials used in certain street improvement work performed in the city of Los Angeles, brought suit upon the contractor's bond to recover the purchase price of said materials. Plaintiff's right to recover is not disputed; the controversy upon the present appeal is the result of issues raised by the cross-complaint.

Defendant Coast Construction Company, hereinafter referred to as the contractor, entered into a contract, in accordance with the provisions of the Vrooman Act (Deering's Gen. Laws 1915, p. 1714, Act 3930), for the performance by said contractor of street work in the city of Los Angeles. Concurrently with the execution of the con-

tract, the contractor, as principal, and the defendant and cross-complainant, American Surety Company of New York, as surety, executed and delivered to the city of Los Angeles the bond required by section 6½ of the Vrooman Act for the benefit of those performing labor upon and furnishing materials for said street improvement work. Thereafter the plaintiff furnished certain material used in said street work and, receiving no part of the purchase price thereof, filed with the board of public works of Los Angeles a verified statement of its claim, which contained the averment that it was filed pursuant to the provisions of the Vrooman Act and also to section 1184 of the Code of Civil Procedure, and purported to require said board to withhold payment from the contractor until plaintiff's claim was paid. Immediately after the filing of this notice, plaintiff brought suit against the contractor and the surety for the recovery of the said purchase price. In that action the defendant Surety Company filed a cross-complaint against the following, as cross-defendants: The plaintiff materialman, the contractor, the city of Los Angeles, the board of public works of said city and the Empire Securities Company, a corporation. The cross-complaint alleges that, prior to the commencement of this suit and prior to the filing of plaintiff's claim, the contractor had assigned to the Empire Securities Company its right to the warrant, assessment, and diagram which, by the terms of the Vrooman Act, are issuable to the contractor upon the completion of the contract and make it possible for the contractor to collect the assessments levied upon the property benefited by the street improvement work. The assignee filed this assignment with the city and with the board of public works prior to the filing of plaintiff's claim. The cross-complaint admits the validity of plaintiff's claim and seeks an injunction restraining the city and its board of public works from delivering to the contractor, or its assignees, the warrant, assessment, and diagram and to enforce the delivery thereof to a receiver to be appointed by the court, to the end that the assessment against the property benefited by the street improvement work may be collected and applied first in payment of the claim of plaintiff and "all other claims similarly situated." The aggregate amount due the contractor on account of said contract is $15,310. Plaintiff's claim

amounts to $2,083.70, and it does not appear that any other claims remain unpaid. The trial court granted the injunction as prayed for, but denied the motion for the appointment of a receiver, without prejudice to the right of cross-complainant to renew the same or of the court to grant such relief should equity require it. Upon the present appeal from the order granting the injunction, prosecuted by the Empire Securities Company, the city of Los Angeles and the board of public works of said city, appellants contend that the right of the Empire Securities Company, the assignee of the contractor, to the proceeds of the contract is superior to any claim of the contractor's surety.

The decision of *Adamson* v. *Paonessa*, 180 Cal. 157, [179 Pac. 880], rendered subsequent to the granting of the injunction in the present proceedings, is determinative of the questions raised upon the appeal now before the court. The facts of that case, in so far as material to a discussion of the instant case, were as follows: A contract for street work, which was executed under the provisions of the "Improvement Act of 1911" (Stats. 1911, p. 730), was assigned by the contractor to one Lloyd, who immediately gave notice of the assignment to the proper authority. Thereafter, the contractor's surety was compelled to pay claims amounting to approximately ten thousand dollars for material and labor furnished and rendered in completing the contract. Upon the completion of the contract, the Surety Company claimed its rights in the assessments collected from the property owners were superior to those of the assignee Lloyd, basing its contention in part upon the theory that, by virtue of its payment of the claims against the contractor, it acquired by subrogation an equitable lien upon any moneys or bonds due under the contract in payment for the work, which lien was superior to any assignment or other disposition which the contractor may have made. The court decided against the surety's claim to subrogation, holding that the materialmen and laborers whose claims the surety had discharged had no rights whatever in the moneys or bonds due under the contract, and that, therefore, the surety could not claim rights in the said moneys or bonds superior to those of an assignee who had first given notice of his assignment. The same is true of the rights of the plaintiff

materialman and the Surety Company to the funds due the contractor in the present case.

Under sections 7, 8, and 9 of the Vrooman Act the assessments of the property benefited must be made upon the completion of the work by the contractor, and the warrant, assessment, and diagram must be recorded in the office of the superintendent of streets. Thereupon the contractor, or his assignee, is entitled to receive the said warrant, assessment, and diagram "on demand, but not until after the payment to the said superintendent of streets of the incidental expenses not previously paid by the contractor, or his assigns." The term "incidental expenses" is defined in section 34 of the act as including the cost of printing and advertising required by the act, expenses of making assessments authorized by the act and the compensation of the city engineer and superintendent. Upon the payment of "incidental expenses" and regardless of whether the claims of materialmen and laborers have been discharged, the contractor, or his assignee, becomes, by virtue of the express provisions of the act, entitled to the warrant and assessment, and, upon receiving the same, he is authorized to immediately demand and receive from the respective property-owners the amounts of the several assessments. [1] There is no provision for the withholding of the warrant until the claims of the materialmen and laborers have been discharged. Since a precisely similar method of procedure was prescribed by the act under consideration in *Adamson* v. *Paonessa, supra,* the language of the court in that case is equally applicable to the case at bar. In the Vrooman Act, as in the "Improvement Act of 1911," the sole provision for the security of materialmen and laborers is the requirement "that every contractor to whom a contract is awarded under the act must file with the superintendent of streets a good and sufficient bond inuring to the benefit of any and all persons performing labor on or furnishing materials used in the work or improvement. There is no provision which gives such claimants any right or lien, equitable or otherwise, upon money or bonds coming to the contractor. In particular, there is no provision in the act authorizing or permitting the retention by the municipality, or by the owners whose lands are assessed, of anything which may be due the contractor in order to pay the claims

of materialmen or laborers, or permitting the deduction of the amount of such claims from anything that may be due the contractor. . . . It contemplates that the contractor be paid directly by the property owners whose property is assessed for that purpose each paying for himself his own assessment. . . . It is manifest that under such circumstances there is no single fund out of which the contractor is to be paid, and it is likewise clear that in view of the fact that payment may be made to the contractor without the interposition of the city treasurer or any other city official or common conduit of payment, any right to have moneys or bonds coming to a contractor retained to meet claims against the contractor would be quite impracticable." (*Adamson* v. *Paonessa*, 180 Cal. 157, 161, [179 Pac. 880, 881].)

From what has been said, it is also obvious that, in the present case, as in *Adamson* v. *Paonessa, supra,* the provisions of section 1184 of the Code of Civil Procedure cannot be invoked. This section provides for the withholding of money by the owner, or person who contracted with the contractor, after receiving notice from one who has performed labor or furnished materials. [2] The Vrooman Act provides a comprehensive, self-sufficient, and exclusive plan for the improvement of streets, etc., which covers not only the doing of the work and the protection of laborers, materialmen, the city, and owners of property, but likewise provides a complete and comprehensive scheme for the payment of the contractor which, as previously stated, is irreconcilable with any process for withholding the funds such as that provided in section 1184 of the Code of Civil Procedure. But this is not the only reason that said section must be held inapplicable to proceedings under the Vrooman Act. That section is, by its own terms, limited in its application to "the persons mentioned in the preceding section," and none of the persons there mentioned are persons performing labor or furnishing materials for work of the character of that dealt with by the Vrooman Act, namely, work upon "streets, lanes, alleys, courts, places, sidewalks, and . . . sewers." (*Kreuzberger* v. *Wingfield,* 96 Cal. 251, 257, [31 Pac. 109]; *Warren* v. *Hopkins,* 110 Cal. 506, [42 Pac. 986].)

[3] It is clear that the decision in *Adamson* v. *Paonessa, supra,* is conclusive upon the point that the funds due the contractor upon completion of work contracted for under the Vrooman Act are free from any claim or lien of materialmen or laborers, and, consequently, that the contractor's surety cannot trace any claim thereto through such creditors of the contractor to the prejudice of intervening *bona fide* assignees of the said funds.    [4] Respondent, however, seeks to distinguish the present case upon the ground that the surety in the instant case does not claim to be subrogated to rights of creditors of the contractor but is seeking exoneration.    That is to say, respondent claims that, by virtue of its right to compel the principal to perform an obligation when due (Civ. Code, sec. 2846), the surety may proceed in equity to compel the contractor to pay the claims of materialmen and laborers from the assessments to be collected under the contract.    "It seems to be well settled that a surety against whom a judgment has been rendered, may, without making payment himself, proceed in equity against his principal, to subject the estate of the latter to the payment of the debt, in exoneration of the surety." (*Dobie* v. *Fidelity etc. Co.,* 95 Wis. 540, [60 Am. St. Rep. 135, 70 N. W. 482]; *Holcombe* v. *Fetter,* 70 N. J. Eq. 300, [67 Atl. 1078]; *Tillis* v. *Folmar,* 145 Ala. 176, [117 Am. St. Rep. 31, 8 Ann. Cas. 78, 39 South. 913]; 5 Pomeroy's Equity Jurisprudence, 2d ed., sec. 2342.)    The difficulty with the position of the respondent surety lies in the fact that in the present proceeding the surety is not seeking to compel the principal to pay its obligation from the principal's own property, but is attempting to sequester funds which have passed, by assignment, to a third party and in which the principal no longer has any right.    This can only be done in the event that the surety has such an interest in the proceeds of the contract *merely by virtue of the suretyship* that the contractor can make no assignment of the contract or the proceeds thereof except subject to the right of the surety to compel a resort to such proceeds in payment of claims for labor and material incurred in the prosecution of the work.    As previously stated, assessments collected or to be collected upon completion of an improvement contracted for under the Vrooman Act are the property of the contractor free from claims arising in connection with

the work called for by the contract. This being so, the surety can compel the contractor to resort to that fund in payment of claims of materialmen and laborers incurred in the prosecution of the work contracted for only in the event that the fund constitutes part of the estate of the principal at the time the surety seeks to compel such payment. In the instant case the right to the proceeds of the contract had, by assignment, passed to third parties prior to the surety's attempt to reach them, and the warrant and assessments represented thereby do not, therefore, constitute part of the principal's assets which the surety has the right to subject to the payment of claims. The *bona fides* of the assignment is not attacked. The mere fact that the assignee knew of the existence of plaintiff's claim at the time of the assignment does not in itself indicate lack of good faith in the making of the assignment. There is nothing to indicate that the assignee had any knowledge that any claim would not be paid by the contractor; it does appear that the assignment was made in consideration of the payment of money to the contractor by the assignee; the surety's attempt to reach the proceeds of the contract was not made until after the assignment was consummated and notice thereof had been given.

[5] Respondent surety calls attention to a clause in the contract for the street work in question which provides that the contractor is to turn over the work free and clear of all claims of laborers and materialmen. It is urged that this clause gave such claimants and the surety the right to resort to the proceeds of the contract for payment of the claims, and that, as regards this right, the assignee of the proceeds of the contract is in no better position than the original contractor, for it took with notice of the rights under this clause of the contract. We need not consider the question of the validity of a clause inserted in a contract for the purpose of imposing upon the contractor's right to demand the warrant a restriction not sanctioned by the act. The clause in question merely expresses the general legal duty on the part of the contractor to pay all materialmen and laborers. It imposes no additional burden upon the contractor, but simply reduces to writing the nature of the legal duty in regard to such matters assumed by the contractor and which would exist whether in writing

or not; it does not attempt in any way to increase the security for the performance of that legal duty on the part of the contractor or provide any additional protection in any form for the claimants in question, but leaves them to their right to sue upon the bond required by the act. The surety can enforce the performance of this obligation by the principal, but it cannot compel the performance by a third party who is a total stranger to the suretyship relation created by the bond. In other words, it cannot compel payment of the claims from the funds due under the contract after the right thereto has passed to a *bona fide* assignee.

The order granting the injunction is reversed.

Shaw, J., Wilbur, J., Sloane, J., Olney, J., Lawlor, J., and Angellotti, C. J., concurred.