[Civ. Nos. 3198, 3199.   Second Appellate District, Division Two.—
November 15, 1921.]

UNITED STATES FIDELITY & GUARANTY COM-
PANY (a Corporation), Respondent, v. THE CITY
OF LOS ANGELES (a Municipal Corporation), et al.,
Defendants; MUNICIPAL SECURITIES COMPANY
(a Corporation), et al., Appellants.

[1] Street Law—Assignment of Contracts for Value—Payment
of Claims by Surety on Bond—Right of Exoneration—Relative
Rights of Assignee and Surety.—A surety on a contractor's
labor and material bond given pursuant to section 6½ of the
Vrooman Act has not the right to claim the benefit of the diagram,
warrant, and assessment issued under such act to reimburse itself
by reason of it having been called upon to pay claims for labor
and material furnished under the contract, as against assignees of
the contractor for value and before the surety sought to compel
payment, in the absence of bad faith in the making of the
assignment.

[2] Id.—Assignment—Evidence—Absence of Bad Faith.—An as-
signment made by a street improvement contractor to a company
financing him in the performance of the work of all his rights
to the diagrams, warrants, and assessments issuable under section
7 of the Vrooman Act is not shown to have been made in bad
faith, as against the surety on the contractor's bond, which was
required to pay claims for material and labor, by proof that the
assignee had knowledge of the contractor's obligations and the
surety's rights and continued to advance money to the contractor
with knowledge that a few small bills had not been paid, deducted
five per cent from the face of the warrant in purchasing it and
permitted the contractor to use some of the money for living ex-
penses and paying alimony to his former wife.

APPEALS from judgments of the Superior Court of
Los Angeles County. Russ Avery, Judge. Reversed.

The facts are stated in the opinion of the court.

Oscar Lawler and Jas. E. Degnan for Respondent.

Albert J. Sherer, Clarence J. Walker and Robert Young
for Appellants.

CRAIG, J.—These two actions between the same parties
and involving the same issues were tried together. Pur-

suant to stipulation, the appeals from the two judgments in favor of the plaintiff are being taken and heard together. There is but little controversy concerning the facts which, in so far as they are material. to this decision, except as they concern findings bearing upon the good faith of defendant, are as follows: One H. V. Gentry entered into two separate contracts with the board of public works of the city of Los Angeles for street improvement work. This was done pursuant to the Voorman Act. One contract concerned Sunset Drive and the other Marathon Street, in Los Angeles. They were executed on the twenty-ninth day of June, 1916, and the United States Fidelity and Guaranty Company, a corporation, on the same date became surety thereon. Also, contemporaneously with this transaction, the Municipal Securities Company entered into an agreement to finance the contractor Gentry in the carrying out of each contract and to receive an assignment from him as security therefor of his rights to the diagrams, warrants, and assessments issuable under section 7 of the Vrooman Act (Stats. 1885, p. 152, as amended by Stats. 1911, p. 627). At the same time that this last-mentioned contract was made, Gentry, by a separate instrument, assigned said diagrams, warrants and assessments to the Municipal Securities Company. Thereafter this company advanced to Gentry $4,778.74 in the Sunset Drive case and $7,325.51 in the Marathon Street contract. Gentry eventually completed both contracts; this being accomplished on Sunset Drive December 20, 1916, and on Marathon Street February 20, 1917. After completion the Municipal Securities Company assigned all its right, title, and interest in the warrant, assessment, and diagram issuable on the Sunset Drive contract to the Pacific Bond and Mortgage Company. This was done at the request of Gentry and the assignee paid ninety-five per cent of the amount of the warrant for the same. The warrant, assessment, and diagram evidencing the contract price for the Marathon Street improvement had not been issued at the time of the filing of this action.

Gentry left unpaid claims for· labor and material on the Marathon Street contract amounting to $924.72 and on the Sunset Drive contract aggregating $1,587.29. He is conceded to have been practically insolvent when perform-

ance of the contract was completed. It appears that the surety did not know of the principal's financial condition until January 22, 1919, and at that date caused notice to be served on the city of the contractor's default in payment for labor and materials and directing the city to withhold the delivery of the warrant, assessment, and diagram in connection with each contract until the city should have proof filed with it of the payment by the contractor of his obligations incurred in the carrying out of the contracts. Nevertheless, as heretofore stated, the city delivered one warrant, etc., as to the Sunset Drive improvement which was subsequently withdrawn, and had issued and was about to deliver a new warrant thereon, and also one for the Marathon Street contract when this suit was instituted by the surety.

The purpose of the action is to restrain the payment of the proceeds of the contracts to the contractor or his assignees and to compel their application to the satisfaction of the labor and material claims incurred in the performance of the work. Certain of those to whom Gentry owed claims were made defendants and during the trial, when their claims were established, plaintiff Surety Company paid the amounts thereof.

Pursuant to stipulation entered into after the actions were begun, the Municipal Securities Company was appointed receiver to take over the warrants and to hold $2,500 in the Sunset Drive case and $2,300 in the Marathon Street case of the proceeds collected thereunder until the issues in the proceedings were finally determined. The court gave judgment for plaintiff and directed the receiver to pay the plaintiff sufficient to reimburse it for the payments which it had made as surety for the contractor to discharge the obligations of the latter for labor and material. It is from this judgment that the defendants appeal.

[1] The principal question involved is this: Has the plaintiff, as a surety on the contractor's labor and material bond, given pursuant to section 6½ of the Vrooman Act, a right to claim the benefit of the diagram, warrant, and assessment issued under that act to reimburse itself by reason of it having been called upon to pay claims for labor and material furnished under the contract, as against defendants who are assignees of the contractor for value and

before the plaintiff sought to compel payment? This question and principles affecting it as applied to the facts of this case have been passed upon partly in *Adamson* v. *Paonessa,* 180 Cal. 157 [179 Pac. 880], and partly in *Los Angeles Rock & Gravel Co.* v. *Coast Construction Co.,* 185 Cal. 586 [197 Pac. 941].

*Adamson* v. *Paonessa* established the law to be that the surety on such a contract as the one here involved possesses no right of subrogation to the lien or claims of materialmen and laborers. Plaintiff asserts that it does not base its cause upon the theory of subrogation, but that the suit is to enforce an equitable exoneration. The first fact necessary to the maintenance of such a cause of action is the existence of funds or property belonging to the principal. If the principal has such an estate, the surety may, in a proper case, subject it to the payment of the debt. (Pomeroy's Equity Jurisprudence, sec. 1419.) In the instant case, the contractor had assigned his right to the proceeds of the contracts before these actions were instituted. In so far as the surety might have a claim to exoneration against such proceeds they are not distinguishable from any other property which the principal might have formerly owned but have sold before action was begun. The assessments to be collected under the Vrooman Act "are the property of the contractor free from claims arising in connection with work called for by the contract." (*Los Angeles Rock & Gravel Co.* v. *Coast Construction Co.,* supra.) "There is no provision of the Vrooman Act which gives such claimant any right or lien, equitable or otherwise upon money or bonds coming to the contractor." (*Adamson* v. *Paonessa, supra.*) Where the contractor has assigned before the surety sues to require the application of the debt, the surety cannot succeed as against the assignee. (*Los Angeles Rock & Gravel Co.* v. *Coast Construction Co., supra.*) But the respondent calls attention to the fact that in the case just cited the court said, "there is nothing to indicate that the assignee had any knowledge that any claim would not be paid by the contractor." From this it is argued that had the assignee in that case possessed such knowledge the proceeds in its hands might have been followed by the surety for the purpose of exoneration. The language quoted mentions such lack of knowl-

edge as incidental only to the statement made previously that "the *bona fides* of the assignment is not attacked." Further, the decision says: "The mere fact that the assignee knew of the existence of plaintiff's claim at the time of the assignment does not in itself indicate lack of good faith in the making of the assignment."

[2] In order that the surety may succeed in the instant case, it must attack the *bona fides* of the assignment. Bad faith must be shown. To meet this burden it is said that while not a party to the suretyship, the assignee was not a total stranger thereto; that it had knowledge of the principal's obligations and of the surety's rights. But the court in *Los Angeles Rock & Gravel Co.* v. *Coast Construction Co., supra,* holds that such information does not constitute a basis for a claim of bad faith.

It is further pointed out that the officers of the Municipal Securities Company knew of some bills that were not paid as early as October, 1916, and yet continued to advance money to the contractor. Our attention is not called to any evidence showing bills contracted after that time and which were not paid. But even though the Securities Company had information that the contractor had failed to pay one bill or even two or three comparatively small claims, it does not follow that knowledge will be imputed that any other bill to thereafter become due would not be paid.

It is said that the Municipal Securities Company appropriated $420.86 from the Sunset Drive contract and applied it to the Marathon Street contract. Such a transfer was provided for in the financing contracts executed June 29, 1916. The application made was of money belonging to Gentry. He raised no objection. It was the payment of a debt owing by him. No action for exoneration had then been instituted.

The fact that the Pacific Bond and Mortgage Company deducted five per cent from the face of the warrant in purchasing it is not evidence of bad faith. That company must collect the assessments as provided by the Vrooman Act, and there would be no object in their making the purchase except to make a profit. The record shows that the contractor arranged the assignment to the Pacific Bond and Mortgage Company and there is nothing

to indicate that the Municipal Securities Company participated in this transaction except to execute the formal assignment at Gentry's request.

It is asserted that the contractor was permitted by the defendant, Municipal Securities Company, to use $420.86 for his own living expenses and paying alimony to his former wife and other private purposes the fact is not disputed that Gentry used valuable equipment of machinery and horses in the work and devoted his own time for a period of about eight months to directing these improvements. Respondent avers that the contractor was short of funds, at least from October, 1916, until the completion of the work. Without living expenses of as moderate amount as appears to have sufficed him, it is difficult to understand how he could have carried out the contract at all.  Surely it was not unfair for him to use $420.86 during the period in question for personal purposes, or for his assignee not to have deprived him of such use.  Of course, there is no question but that Gentry and the Municipal Securities Company acted entirely within their legal rights in this behalf.

Respondent repeatedly urges upon our attention the fact that the Municipal Securities Company must be charged with knowledge of the provision in the contract that "The party of the first part further agrees . . . that he will at his own cost and expense furnish all necessary materials and labor for said work, and that the material used therein shall comply with the said specifications, and be to the satisfaction of the said board of public works, and that he will within the time hereinafter fixed turn the said work over to the said board of public works complete and ready for use as a public street, and free and discharged of all claims and demands whatever, for or on account of, any and all labor and materials used or furnished to be used in said improvement.''  The law is established beyond argument that such a provision in the contract adds nothing to the obligation of the contractor and therefore can give the surety no greater rights than he possessed without it. (*Adamson* v. *Paonessa*, 180 Cal. 157 [179 Pac. 880].)

But the court in finding 8 of the Sunset Drive case and finding 8 of the Marathon Street case concluded in substance that the assignments executed by Gentry to the ''Municipal Securities Company,'' June 29, 1916, were at

the time of their execution a part of a plan or scheme by which "the entire proceeds of said contract might be applied to the benefit of the defendant, Municipal Securities Company, and imposing upon the plaintiff the duty of paying all labor and material claims which said contractor might leave unpaid upon the completion of said work without recourse to the proceeds of said contract," and by finding 10 of the Sunset Drive case and 9 in the Marathon Street case that "On the seventh day of March, 1917, said Municipal Securities Company demanded of said board of public works, and of the members thereof, the delivery to it of the new warrant, assessment, and diagram, so directed to be issued . . . and without the intent of appropriating to its own use the amount remaining due upon said warrant; that said board of public works, with full knowledge of the failure of said contractor to comply with the provision in said contract requiring him to turn over said work freed and discharged of all claims and demands of every nature and kind whatsoever, for labor performed or material furnished in connection with said improvement, and notwithstanding the notice so served by plaintiff as aforesaid, stated that it would deliver to said Municipal Securities Company or upon its order said warrant, assessment, and diagram unless restrained by order of this court," and finding 15 in the Sunset Drive case and finding 14 in the Marathon Street case that while it is true that in the first case the Municipal Securities Company had paid subsequent to the twenty-ninth day of June, 1916, and up to about the thirteenth day of January, 1917, the sum of $4,778.74 and in the Marathon Street case between the twenty-ninth day of June, 1916, and up to or about the fifteenth day of August, 1917, the sum of $7,325.51, that at the time said company "paid said money and every part thereof it knew that the plaintiff was surety upon the labor and material bond so given by it as aforesaid and it paid said money under the plan and with the intent in paragraph VIII herein found. . . . It is not true that the moneys so advanced by said Municipal Securities Company to or for the account of said contractor was expended by said contractor or by said company for labor or material furnished to or used by said contractor in the performance of the work of said public improvement, but, on the contrary, a

part thereof in excess of the claims of materialmen hereinbefore found to be unpaid was applied by said Gentry to the knowledge of said Municipal Securities Company to the payment of his own personal living expenses and to the performance of said contract.''

Respondent asserts that these findings establish facts which remove the instant case from the control of the principals announced in *Los Angeles Rock & Gravel Co.* v. *Coast Construction Co., supra.* Appellant claims that the evidence is insufficient to justify such findings in so far as they' determine the attempted perpetration of fraud upon the surety, and that if the element of fraud be eliminated, the decision of the case at bar must be controlled by the case of *Los Angeles Rock & Gravel Co.* v. *Coast Construction Co., supra.*

The complaint contains no allegation of fraud or of fraudulent intent upon the part of Gentry or the Municipal Securities Company in the making of the assignments. Paragraph XIV of complaint in the Sunset Drive case alleges in part as follows: ''That on or about the twenty-ninth day of June, 1916, said H. V. Gentry filed with the board of public works of the city of Los Angeles an assignment of said contract to the Municipal Securities Company, a corporation, defendant herein.'' In addition to this, paragraph XXVI reads: ''but plaintiff alleges that such assignment, if any is void as against plaintiff in that it was accepted by said Municipal Securities Company with full knowledge of the terms and conditions of said contract and of the right of plaintiff to have any funds or credits in the hands of said city or of any of its officers, arising out of the contract aforesaid, applied to the payment of the claims of laborers and materialmen before resort could be had to the bonds so given by plaintiff.'' The complaint thus limits its attack upon the assignment to the single ground of knowledge upon the part of the assignee of the rights of the surety under the contract and bond. This, the *Los Angeles Rock & Gravel Co.* v. *Coast Construction Co., supra,* holds is not sufficient to defeat the assignment of the contractor's interest in such a transaction as the one here involved. During the progress of the trial, counsel for the surety company replied ''No, your Honor,'' to the court's question. ''I do not think the good faith is questioned in the matter,

is it? You do not question the good faith, do you, Mr. Degnan?" The "matter" being discussed was the entire financing agreement.

The Municipal Securities Company agreed with the contractor to provide funds up to a maximum amount named in each instrument, necessary to carry out the contracts. It took the assignments in question from him as security until it had advanced, from time to time, $4,778.74 on the Sunset Drive contract and $7,325.51 on the Marathon Street contract. The terms upon which the money was supplied were openly and clearly set forth in written instruments. Subsequently, the Municipal Securities Company proceeded to use the assignments for the purpose for which they had been taken, namely, to reimburse itself for the money thus advanced, with' the ordinary rate of interest as provided in the contracts. It used such reasonable precautions as were necessary for its own protection to see that the debts incurred by the contractor were paid; in this behalf it owed no duty to the surety based upon the suretyship or the financing contract, because the surety was a stranger to the latter agreement and the Municipal Securities Company had no part in the execution of the bond. There was no contractual relationship existing between them. The assignments which were taken were contemplated by the Vrooman Act, for it provides that to said assessment there shall be attached a warrant and that the said assessment, warrant, and diagram shall be recorded in the office of said superintendent and thereafter shall be delivered to the contractor or his agent or assigns on demand, upon the payment of the incidental expenses not previously paid. The contractor arranged with the Pacific Bond and Mortgage Company to supply him enough money to finish the contract and in carrying out that arrangement, it took an assignment from the Municipal Securities Company. The transactions between the contractor and his assignee were of a purely business character, each party safeguarding his own interests; neither company charged an exorbitant rate of interest for the use of their money and Gentry substantially applied the funds which they advanced to the completion of the street improvements, so that his assignees were fully protected. There is nothing in the record to indicate a conspiracy on the part of these parties to defraud the

surety and nothing in their conduct which measures up to fraud as against the surety. Of course, the surety took some risk when it executed the bonds. Presumably it received compensation for such hazards and investigated the financial standing and character of the man whose fulfillment of his contracts they guaranteed before becoming sureties on his bonds. This is not a case where the surety is asking the court to require the principal to pay the labor and material claims from funds belonging to him. It is an attempt to follow such funds after they have ceased to be the principal's property and have passed into the hands of assignees who paid value and received the property in good faith.

With no pleading alleging fraud or facts from which fraud must be inferred, and the plaintiff's distinct disavowal of any claim that the Municipal Securities Company had acted in bad faith, and without an application for the amendment of pleadings having been made or the defendant having been in any way enlightened so that it could defend itself against a charge of bad faith, it would be eminently unfair to construe the findings complained of as findings of fraud unless such a meaning were clearly expressed.

If such construction were to be placed upon them, they must be treated as surplusage, because they do not bear upon any issue presented by the complaint. Yet, without them, the plaintiff can have no right to a claim upon the proceeds of the warrant, diagram, and assessment in an action for exoneration begun after assignment for value.

However, the evidence to support a possible finding of fraud as summarized by respondent is that the Municipal Securities Company took the assignments with knowledge of the security's obligation, of the necessity of the contractor to employ labor and proper material, of the contractor's financial limitations, and of the provision in the contract requiring the work to be taken over free and clear of claims.

As we have previously pointed out, such knowledge as shown by evidence in this case does not make the acceptance of an assignment fraudulent.

The judgment is reversed and the superior court directed to dissolve the injunction.

Finlayson, P. J., and Works, J., concurred.