[Civ. No. 2440. Third Appellate District.—May 4, 1922.]

MARYLAND CASUALTY COMPANY (a Corporation), Respondent, v. M. T. SHAFER et al., Defendants; LINDSAY NATIONAL BANK (a Corporation), Defendant, Cross-Complainant and Appellant.

[1] PUBLIC WORK — RETENTION OF FUND — PAYMENT OF CLAIMS—ASSIGNMENT BY CONTRACTOR—RELATIVE RIGHTS OF PARTIES.—Where a county in a contract for highway construction expressly reserved to itself the right to retain twenty-five per cent of the estimated value of the work for thirty-five days after the acceptance thereof for the purpose of meeting any unpaid claims which might be regularly authenticated and presented to the board of supervisors for labor bestowed upon and materials furnished for and in construction of the highway, the fund so retained was entirely with-

drawn from the control of the contractor as to so much of the estimated value of the work done under the contract as was represented by such fund, and the contractor had no assignable interest therein.

APPEAL from a judgment of the Superior Court of Tulare County. T. N. Harvey, Judge. Affirmed.

The facts are stated in the opinion of the court.

Middlecoff, Scott & Ham, Farnsworth, McClure & Burke, Lewis H. Smith, W. N. Gilliam, J. A. Chase, Marley Fisher, Perry F. Backus, Russell & Heid, W. O. Tyler, Scarborough & Bowen, Blakeley Hughes and W. C. Hamilton for Appellant.

Bicksler, Smith & Parke and Franklin A. Plank for Respondent.

HART, J.—This is one of three cases, growing out of the same transaction, which, for the purpose of consideration on appeal, were consolidated. The other cases are numbered, respectively, 2438 and 2439. All three were submitted upon the same record. There are, however, certain questions presented in this case which do not arise in the others.

The appeal here is by Lindsay National Bank from the judgment, upon the judgment-roll alone.

The general facts of the transaction out of which the several cases arise are stated in an opinion filed in this court this day (*ante*, p. 580 [208 Pac. 192]), entitled *"Maryland Casualty Company, a Corporation, Plaintiff and Respondent,* v. *M. T. Shafer et al., Defendants and Respondents, O. M., C. M. and E. O. Thompson, Copartners, Doing Business Under the Firm Name and Style of Thompson Bros., Defendants, Cross-Complainants and Appellants."* It is conceived, however, that reference to those facts should be made herein.

The plaintiff was surety of the defendant, Shafer, on a contract between the latter and the county of Tulare, whereby Shafer agreed to build the Lindsay-Tulare division of a system of public highways in said county for a certain specified consideration. The contract was entered into on

the ninth day of February, 1918, and the work of construction completed and the same accepted by the board of supervisors of said county on the twenty-eighth day of January, 1919. Under the contract Shafer was to furnish all the labor, materials, supplies, team hire, and equipment essential to the consummation of the terms of said contract or the completion of the work according to the requirements thereof. Besides a bond for the faithful performance of the contract which Shafer was required by the contract to furnish the county, Shafer also executed another and separate bond as required by the contract as well as by the statute (Stats. 1897, pp. 201, 202), the specific purpose of which was to secure the payment of all claims for labor, materials, supplies, etc., bestowed upon and furnished in the construction of the work.

The contract, following the provision of subdivision 11 of section 2643 of the Political Code to the same effect, provides that the county shall retain twenty-five per cent of the estimated value of the work for a period of thirty-five days after the same has been regularly accepted. It is further provided in said contract that the county "may at its option, retain out of any amounts due the contractor, a sufficient sum to cover and pay any such unpaid bills and claims, provided that sworn statements of said bills and claims have been filed in the office of the board of supervisors on or before the date on which the final payment due the contractor, under this contract, shall be made by the first party through its board of supervisors, as hereinafter set forth in article XIV of this contract and not later than ninety days after the completion and acceptance of the work." In pursuance of said provision, the county retained the sum of $12,919.81 due under the contract, the said sum being less than twenty-five per cent of the cost of the work.

It appears that, upon the completion and after the acceptance of the work, there remained due from the contractor numerous claims in favor of persons performing labor upon and furnishing materials, supplies, etc., for the work. It is also made to appear that the contractor made assignments to various persons of sums due or to become due under the contract and which are still unpaid.

The plaintiff, as surety of the contractor, instituted this action against the county, the contractor and all claimants under the contract for the purpose of obtaining an adjudication of their respective rights in and to the balance due from the county to the contractor under the contract and to determine the plaintiff's liability under its contracts of suretyship, it being also the surety on the faithful performance bond. The several claimants appeared and filed cross-complaints, setting forth their respective claims to the moneys retained by the county and their right to a recovery against the plaintiff. The balance due under the contract, to wit, the sum of $12,919.81, which was retained by the county by authority of the contract and subdivision 11 of section 2643 of the Political Code, was paid into court by the county, under a stipulation that the same should be distributed in such manner and to such parties as the court might adjudge, and there is no claim put forth by any of the claimants against the county. The gravamen of the cross-complaint or the facts upon which the appellant relies for a recovery may here be given in the language of said pleading:

"VI

"That on December 22, 1918, said contractor, said M. T. Shafer, for a valuable consideration, transferred and assigned to one H. E. French, the sum of Five Thousand ($5,000.00) Dollars, in lawful money of the United States, out of the final payment which became due under and pursuant to said contract referred to in said cross-complaint from said County of Tulare to said M. T. Shafer on March 4, 1919.

"That on December 23, 1918, said H. E. French, for a valuable consideration assigned and transferred to this cross-defendant, Lindsay National Bank, all his right to receive from said County of Tulare said sum of Five Thousand ($5,000.00) Dollars which had been so assigned to him by said M. T. Shafer, and ever since December 23, 1918, this cross-defendant, Lindsay National Bank, has been and now is the owner and holder of said claim for said sum of Five Thousand ($5,000.00) Dollars to be paid out of said final payment, and no part thereof has ever been paid by said County of Tulare to said Lindsay National Bank."

The said cross-complaint proceeds to allege that the said

cross-defendant duly notified the said county of Tulare of its claim and demand for said sum of $5,000 on the second day of January, 1919; that on said day it filed in the office of the clerk of the board of supervisors of said county its verified claim and demand for said sum "in the manner and form required by law"; that on the second day of June, 1919, said board of supervisors rejected said claim and demand and has at all times refused and still refuses to pay said cross-defendant said sum. It is further alleged that said demand of said cross-defendant is and ever since March 4, 1919, has been payable out of the said sum of $12,919.81, the balance due the contractor under said contract and retained, as before alleged, and as is admitted, by the county.

The court found the facts with reference to the assignment upon which the bank relies in substantial accord with the above averments and that, as against all persons except the plaintiff, Maryland Casualty Company, the said bank by virtue of said assignment is entitled to receive out of said fund of $12,919.81 so deposited in court, the sum of $5,000 with interest, etc. The court awarded to the several lien claimants appearing in the action by cross-complaint sums aggregating amounts far in excess of the money retained by the county and deposited in court as indicated. The judgment is that "said Lindsay National Bank take nothing herein against said Maryland Casualty Company and no part of $12,919.81." It was further decreed that the clerk of the court prorate and pay said $12,919.81 to the parties herein given judgment against said Maryland Casualty Company, "paying to each of said parties such proportion of said $12,919.81, as his judgment against said Maryland Casualty Company bears to the total amount of all such judgments. . . . And if the said Maryland Casualty Company shall deposit with said clerk a sufficient sum which, in addition to said $12,919.81, would satisfy said judgment against said company, the clerk shall accept such deposit and therefrom pay the balance of said judgment upon satisfaction thereof by such judgment holders."

There is no question raised herein, as in *Maryland Casualty Co. v. M. T. Shafer et al. and Thompson Bros.* (Civil No. 2439), *supra,* as to the liability of the plaintiff under

the "faithful performance bond" executed by it to the county contemporaneously with the execution and giving of the bond under the act of 1897, *supra,* to secure the payment of the claims of materialmen, mechanics, laborers, etc., employed by contractors upon street, municipal, or other public work. Nor could any such proposition be relevantly raised and urged in this case, inasmuch as the cross-complainant herein, as we shall presently more particularly note, undertakes to secure the satisfaction of its claim out of a specific fund set aside for the purpose of paying the claims of laborers, mechanics, materialmen, etc.

[1] The situation presented here is simply this: That the county in the contract with Shafer expressly reserved to itself the right to retain twenty-five per cent of the estimated value of the work for thirty-five days after the acceptance thereof for the purpose of meeting any unpaid claims which might be regularly authenticated and presented to the board of supervisors for labor bestowed upon and materials furnished for and in the construction of the highway, and that in pursuance of that provision of the contract the board of supervisors did retain the sum of $12,919.81, due under the contract and which amounted to a sum less than twenty-five per cent of the value of said work, etc. The simple question to be determined here, then, is, whether an assignment made by the contractor upon the fund so retained and sequestered for a specific purpose is valid as against those claims which were payable out of said fund and arising out of the construction of the work. A negative answer to the question so propounded must, for obvious reasons, be returned.

Whether the authority for the provision in the contract investing the county with the right to retain twenty-five per cent of the value of the work for the purposes stated proceeds from subdivision 11 of section 2643 of the Political Code or from any other statute, is immaterial, since it will not be questioned that the county may, independently of statutory authority and by contract, authorize the retention by it of so much money as may be due on the estimated value of the work as will wholly or in part satisfy claims against the contractor for labor and materials used in the execution of the terms of the contract and which the contractor has not paid. When, therefore, a fund is thus

established for the purposes stated, so much of the esti-
mated value of the work done under the contract as is
represented by such fund is entirely withdrawn from the
control of the contractor. In other words, the contractor
has no assignable interest in said fund, unless it should
transpire that he had paid all claims for labor and material
incurred in the performance of the contract or after all
such unpaid claims have been satisfied by the county out
of such fund there still remains therein a balance, which
is not this case. But this point is discussed and disposed
of in accordance with the view thus expressed by this court,
in the opinion in action No. 2439 this day filed. It is
therein said that the "provision for retention by the county
of sufficient funds to pay claimants who file verified claims
was equally a part of plaintiff's contract and was for the
protection of the surety as much as for that of the claim-
ants. To the extent that such provision was observed, the
liability of the surety was lessened. The fund retained
was beyond the control of Shafer and no assignment by
him could prejudice the rights of the parties for whose
benefit the fund was created. To hold otherwise would
be to nullify the stipulation of the contract for the re-
tention of the fund and to destroy the security intended
for the benefit of claimants bringing themselves within its
terms as well as for the protection of the surety."
(Citing cases.)

The appellant, however, contends that it is supported in
its claim to the right to payment out of the moneys re-
tained by the county and deposited in court as indicated
by the recent case of *American Surety Co.* v. *Empire Secu-
rities Co.*, 185 Cal. 586 [197 Pac. 941], and also the case
of *Adamson* v. *Paonessa*, 180 Cal. 157 [179 Pac. 880]. In
the opinion in the *Thompson Bros.* case (Civil No. 2439),
*supra*, this court called attention to the distinction between
the cases named and the one at bar and the reasons for
the distinction and held that they had no application to
the instant case. What is said therein with respect to
those cases and their inapplicability to the situation pre-
sented here is sufficient for the purposes of the decision
of the present case.

But there is still another consideration which supports
the conclusion that the assignment declared upon by the

appellant cannot legally be satisfied out of the fund referred to, said fund not being sufficient to meet and satisfy all the claims for labor and materials which were put into the work and unpaid by the contractor, and it is this: That it is not made to appear by the complaint or the findings that the money received by the contractor upon the assignment was used in satisfying claims against him for labor and materials used in the construction of the highway. For aught that may be known to the contrary from the record before us, the assignment might have been made for the purpose of securing a loan of money from the original assignee, French, to be used by Shafer for private purposes, or for a purpose entirely foreign to the contract. It is plainly manifest, as is above indicated, that the fund in question was subject to no other burdens than those which arose out of claims against the contractor for labor and materials furnished in the construction of the work.

Our conclusion is that the judgment below is correct and it is, accordingly, affirmed.

Burnett, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 3, 1922.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 3, 1922.

All the Justices concurred, except Wilbur, J., who dissented, and Lawlor, J., and Lennon, J., who were absent.

Shurtleff, J., was also absent and Richards, J., *pro tem.*, was acting.